ZEB G. SHEFF v. CONOCO, INCORPORATED, ASHLAND CHEMICAL COM-
PANY, WESTERN MARYLAND RAILROAD COMPANY, AND NORFOLK
AND WESTERN RAILWAY, AND SOUTHERN RAILWAY

No. 8321SC45

(Filed 17 January 1984)

**1. Master and Servant § 38.2— FELA claim—sufficiency of evidence of negligence**

In an action brought under the Federal Employers' Liability Act, the
evidence of negligence on the part of the railroad was sufficient where plaintiff
and his supervisor, an experienced inspector, saw escaping fumes from a tank
car some 30-40 minutes prior to the removal of the car by "humping" it; de-
fendant's clerk was advised by the plaintiff of the smoking car prior to the
"humping" process; the clerk did nothing until after the car was "humped"
other than advise plaintiff the car would not be made part of a train to go
elsewhere; the tanker was plainly marked as dangerous; the tanker was giving
off fumes, indicating that it was leaking; and despite these dangerous fore-
warnings, the tanker was permitted to sit in the railroad yard until it was
bumped by three other cars with nothing done to protect the employees. Plain-
tiff was not furnished a safe place to work when his fellow employees ignored
danger signs completely and allowed a dangerous chemical vapor to descend
upon plaintiff and injure him.

**2. Master and Servant § 42— failure to instruct award nontaxable—error**

In an action brought under the FELA, the trial court erred in failing to in-
struct the jury that any award plaintiff might receive was nontaxable under
the Federal Income Tax laws once requested by defendant to do so.

APPEAL by defendant from *DeRamus, Judge.* Judgment en-
tered 8 September 1982 in Superior Court of FORSYTH County.
Heard in the Court of Appeals 5 December 1983.

Plaintiff seeks recovery under the Federal Employers' Lia-
bility Act for injuries allegedly sustained while serving as an ap-
prentice car man for Southern Railway (Southern). He contends
he was not provided a safe place to work because of the negli-
gence of the several defendants. The case was dismissed against
all defendants except Southern, and issues were submitted to the
jury and answered as follows:

1. Was the plaintiff, Zeb G. Sheff, injured by the
negligence of the defendant, Southern Railway Company?

Answer: <u>Yes.</u>

2. Did the plaintiff, Zeb G. Sheff, by his own negligence, contribute to his injury?

Answer: No.

3. What monetary amount of damages for injury, if any, has the plaintiff, Zeb G. Sheff, sustained as a proximate result of such negligence?

Answer: $30,000.00.

4. What percentage of the plaintiff's damages are attributable to contributory negligence of the plaintiff, Zeb G. Sheff?

Answer: 0%.

Following the jury verdict, the judge recessed the court and met in private with the jurors in the jury room. After the judge and jury returned to the courtroom, defendant Southern moved for a judgment notwithstanding the verdict or in the alternative a new trial, and the motion was denied. Southern gave notice of appeal and subsequently filed notice of appeal for the judgments entered directing verdicts in favor of defendant Conoco, Inc. on the crossclaim filed by defendant Southern, and on the claims of plaintiff against Conoco.

*William T. Graham for plaintiff appellee.*

*Womble, Carlyle, Sandridge & Rice by Charles F. Vance, Jr. and M. Ann Anderson; and Brooks, Pierce, McLendon, Humphrey and Leonard by L. P. McLendon, Jr. for Southern Railway Company, defendant appellant.*

*Perry C. Henson, Jr. and Jill R. Wilson for Conoco, Inc., defendant appellee.*

HILL, Judge.

Defendant Southern brings forth six assignments of error concerning the trial judge's ruling on numerous motions, instructions to the jury, and the private conference with the jurors outside the presence of counsel after the jury verdict was rendered. We have examined each of the assignments and conclude the trial judge committed error in failing to instruct the jury concerning

the taxable status of plaintiff's award. Such error necessitates the case be remanded.

The facts are summarized in pertinent part as follows:

The plaintiff was serving as an apprentice car man under the supervision of a superior in the Winston-Salem railroad yards where a train of cars is broken down from a location on a main or lead line and shifted onto spur lines to become parts of new trains which are routed to different geographic locations. Plaintiff's duty, among other things, was to inspect freight cars in transit, and to notify a superior if any were defective.

On 7 May 1978 plaintiff and his superior, Mr. Harry Scott, began inspecting cars in the Salem yard. They walked on opposite sides of the trains. When they noted a defective car, they gave it a "bad order" designation and marked it for repair or other proper designation. Both plaintiff and Mr. Scott noticed a tank car smoking near the dome on the center of the car. There was a "just visible" amount of smoke which was drifting off to the side of the car. Further inspection revealed the car was "flagged" with a red tag denoting it contained muriatic or hydrochloric acid, a dangerous substance.

The car belonged to Conoco, Inc. It had been leased to Ashland Chemical Co. and filled with the chemical. Thereafter the car had been shipped through two intermediate carriers, Western Maryland Railway and Norfolk and Western Railway to Southern Railway.

Plaintiff and Mr. Scott walked back to a shed on the railroad yard known as the "shanty." The cloud over the car had almost dissipated when plaintiff arrived at the shanty. Upon arrival plaintiff reported the smoking car to the clerk, Ken Moore, who advised him the car would not be part of any train leaving that day, but rather would remain locally. Plaintiff then stated he would "look the other way" since the car was not his responsibility.

As plaintiff sat in the shanty he observed the work crew cut loose three cars which rolled down the track, bumping the tank car. This activity is called "humping," and its purpose is to move idle cars into position for coupling with other cars making up a

train. Upon impact the contents of the tank car splashed, and a fog, ". . . not a great deal, but right much . . . ." came out of the dome. The wind took the cloud in a southwesterly direction toward the plaintiff. Plaintiff testified he felt a coolness upon his face "like a little fine rain." A few seconds later he noticed a burning sensation on his nose, hands, neck and arms. He continued to sit at the shanty some five or ten minutes. Plaintiff was wearing a helmet provided by the railroad, a long sleeve shirt, long pants, long tube socks, boots, and safety glasses. He had taken off his gloves. Plaintiff further testified he observed no smell or odor, but he had never smelled muriatic acid. He never got closer than 70 to 80 feet from the tank car.

One or two minutes after the tanker had been cut loose from the "humping" process, Ken Moore asked the conductor to take the car down to the far end of the yard so they would not have to smell the odor. Prior to the impact of "humping" no fumes had escaped from the car. Moore further testified the fog or cloud came out of the little dome in the top of the car. He did not know the cloud was dangerous, but he followed the usual procedure taken when an employee sees something which might be dangerous or different: "he gets it stopped until he can get the right official to take care of it." Plaintiff's trainer knew the car was smoking thirty to forty minutes between the time he first observed it and saw it the second time. He entered the smoking car in his log book in the locker room.

Plaintiff remained at the shanty some five or ten minutes, then went to the locker room where he ate supper. He had trouble swallowing. Later he felt dizzy, nearly passed out, hyperventilated, and became extremely nervous and weak. He had difficulty speaking. Plaintiff was taken to the hospital, released, and returned to his job for the balance of the shift when he was taken home by another employee. He lost time and wages totaling $2,500.00 but thereafter continued his employment with Southern. Subsequently he developed injuries to his eye, which he contends arose as a result of exposure to the acid. His wages have increased substantially since the accident. Plaintiff also contends he lost a second job at McLean Trucking Company, but the damages arising therefrom appear insignificant.

Southern notified Conoco of the damaged tanker. The following day a Conoco representative removed the metal dome to expose a valve. When the valve was exposed, a ruptured disc was discovered. The disc had performed its function satisfactorily. The purpose of the disc was to rupture in case of pressure buildup which could result in going from one climate to another. Once it was ruptured, it must be replaced. The representative worked directly over the vent with no protective clothing. He was in no manner affected by the vapors or the acid.

## I. Ruling on the Motions

[1] For its first assignment of error Southern contends the court erred in denying its motion for a directed verdict made at the conclusion of plaintiff's evidence and renewed at the conclusion of all the evidence of any actionable negligence on the part of Southern.

The section of the Federal Employers' Liability Act (FELA) under which plaintiff seeks to recover provides as follows:

> Every common carrier by railroad while engaging in commerce between any of the several states . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works . . . or other equipment.

45 U.S.C. Sec. 51 (1976).

Although the decisions under the Act are most liberal in allowing recovery for employees, the Act does not make an employer an absolute insurer of the safety of his employees. Rather, for an employee to recover under the FELA, the employee must prove the occurrence of negligence on the part of the employer. *Bennett v. R.R.*, 245 N.C. 261, 96 S.E. 2d 31, *cert. denied,* 353 U.S. 958, 1 L.Ed. 2d 909, 77 S.Ct. 865 (1957);.*Southern Railway Co. v. ADM Milling Co.*, 58 N.C. App. 667, 294 S.E. 2d 750, *disc. rev. denied,* 307 N.C. 270, 299 S.E. 2d 215-16 (1982). If the evidence shows nothing more than a fortuitous injury, a directed verdict

for the railroad is proper. *Camp v. R.R.*, 232 N.C. 487, 61 S.E. 2d 358 (1950).

The thrust of Southern's argument is that plaintiff was provided with a safe place to work; that the tank car which caused plaintiff's alleged injuries was a standardized one and equipped with a standard disc designed to rupture and thereby prevent substantial damage. Plaintiff's argument misses the mark.

Defendant Southern's employee Harry Scott, an experienced inspector, saw the escaping fumes from the tank car some thirty to forty minutes prior to the removal of the car by "humping" it. Ken Moore was advised by the plaintiff of the smoking car prior to the "humping" process. Moore did nothing until after the car was "humped" other than advise plaintiff the car would not be made part of the train to go elsewhere. The tanker was plainly marked as dangerous. The tanker was giving off fumes, indicating it was leaking. Despite these danger forewarnings, the tanker was permitted to sit in the railroad yard until it was bumped by three other cars with nothing done to protect the employees. Plaintiff was not furnished a safe place to work when his fellow employees ignore danger signs completely and allow a dangerous chemical vapor to descend upon another employee and injure him. Southern's conduct or lack thereof manifested a "failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation." *Tiller v. Atlantic Coast Line R. Co.*, 318 U.S. 54, 67, 87 L.Ed. 610, 617, 63 S.Ct. 444, 451 (1943). Therefore, injury to plaintiff has "result[ed] in whole or in part from the negligence of . . . employees of such carrier [Southern Railway] . . . ." 45 U.S.C. Sec. 51 (1976). This assignment of error is overruled.

Defendant Southern also contends the trial judge erred in denying its motions to set aside the verdict and for judgment notwithstanding the verdict, or in the alternative, a new trial. We have reviewed the records and briefs of the parties and find the assignment to be without merit.

We find no error by the trial judge in granting defendant Conoco's motion for a directed verdict. The disc ruptured as it was intended to do, and the rupture was not the proximate cause of plaintiff's injury.

Nor do we find error by the trial judge in granting a directed verdict in favor of the defendants Norfolk and Western Railway and Western Maryland Railroad Company at the close of appellee Sheff's evidence. No evidence of negligence existed in regard to these intermediate carriers.

## II. Jury Instructions

Defendant Southern assigns as error the trial judge's refusal to instruct the jury that Southern had no duty to inspect a car received from a connecting carrier to ascertain whether a disc was defective. We agree with Southern's contention that a railroad has the duty to reasonably inspect cars in its possession to ascertain "fairly obvious" defects in its construction or state of repair which constitutes a likely source of danger. *See Ambrose v. Western Maryland Rwy. Co.*, 368 Pa. 1, 81 A. 2d 895 (1951). However, failure to so instruct the jury is not prejudicial error. The tanker was filled with a dangerous substance; the placard plainly denoted the dangerous contents. The tanker was emitting a gaseous vapor, indicating the chemical was escaping. The vapor was seen by the employees. Whether the leak was from an obvious defect such as a crack in the car or from an unrevealed broken disc is immaterial. The railroad was on notice of a dangerous situation and should have taken the necessary steps to protect its employees. This assignment of error is overruled.

[2] Defendant Southern also requested the Court to instruct the jury that any award plaintiff might receive was nontaxable under the Federal Income Tax laws. Specifically, the following instruction was requested and denied by the court:

> I charge you, as a matter of law, that any award made to the plaintiff in this case, if any is made, is not income to the plaintiff within the meaning of the Federal Income Tax Law. Should you find that plaintiff is entitled to an award of damages, then you are to follow the instructions already given to you by this Court in measuring those damages, and in no event should you either add to or subtract from that award an account of federal income taxes.

This being an FELA case, we feel bound by the ruling in another FELA case, *Norfolk & Western R. Co. v. Liepelt,* 444 U.S. 490, 62 L.Ed. 2d 689, 100 S.Ct. 755, *reh'g denied,* 445 U.S. 972, 64

L.Ed. 2d 250, 100 S.Ct. 1667 (1980). In that case the U. S. Supreme Court held a state trial court erred in refusing to instruct the jury as to the nontaxability of a FELA damage award, since such instruction would eliminate an area of doubt or speculation that might have an improper impact on the computation of the award.

We distinguish the foregoing case from *Scallon v. Hooper*, 58 N.C. App. 551, 293 S.E. 2d 843, *disc. rev. denied*, 306 N.C. 744, 295 S.E. 2d 480 (1982), cited by plaintiff as rejecting *Liepelt*. *Scallon* was a wrongful death action arising out of an automobile collision. The court ruled that in wrongful death actions brought under our state statutes, the consideration of income tax consequences is too conjectural or speculative a factor. Consideration of the tax issue as it relates to each beneficiary would ordinarily involve abundant and intricate evidence and jury instruction on present and future tax and nontax liabilities of each beneficiary, resulting in manifest complications in determining present monetary value of the decedent to the beneficiaries. Such is not the case before the court where the injured party is the direct recipient of any award.

This assignment of error has merit and the case must be remanded for a new trial as to the measure of damages alone, as the error creating the reason for the new trial is confined to one issue. *See Robertson v. Stanley*, 285 N.C. 561, 206 S.E. 2d 190 (1974).

### III. The Jury Conference

Defendant Southern argues the trial judge erred by going to the jury room in the absence of attorneys following the return of the jury's verdict and before their discharge, but prior to hearing and passing on Southern's post-verdict motions. At the time, the jury had been polled and counsel for both plaintiff and defendant had indicated nothing further was required of the jury. Defendant Southern contends the judge who rules on a motion for judgment notwithstanding the verdict should not be exposed to the jury's rationale for their ruling before making his decision; that such actions certainly could be the basis of suspicion. While it would have been the better practice to go to the jury room, if at all, after all post-trial motions were disposed of, there is nothing in the record showing any basis for question. Defendant does not

challenge the integrity and honesty of the trial judge. This assignment of error is overruled.

For the reasons set out herein we affirm that portion of the judgment holding defendant Southern negligent, but vacate the award of damages and remand the case on the question of damages alone.

Affirmed in part and vacated in part and remanded.

Chief Judge VAUGHN and Judge BECTON concur.