SOUTHERN RAILWAY COMPANY, a Corporation v. ADM MILLING COM-
PANY, a Corporation

No. 8126SC992

(Filed 7 September 1982)

1. **Indemnity § 2; Master and Servant § 38— liability under Federal Employers'
   Liability Act—duty to indemnify under contract**

   Where (1) plaintiff was obligated under the FELA to provide for its
   employees a safe place to work; (2) plaintiff obligated itself by contract to per-
   form acts and render services in connection with defendant's privately owned
   railroad tracks and right-of-way which it was not obligated to perform for the
   public generally; and (3) as part of the consideration for plaintiff's incurring
   the obligation, defendant promised to "indemnify and save harmless" the plain-
   tiff "against any and all damage" resulting from defendant's negligence, and
   where plaintiff's employee was injured while working on a spur track serving
   defendant's Mecklenburg plant, the trial court erroneously entered summary
   judgment for defendant since there were issues as to plaintiff's negligence and
   subsequent liability to its employee as determined by the standards imposed
   by the FELA; as to whether plaintiff's liability was occasioned by defendant's
   negligence; and as to defendant's liability, if so, to plaintiff, pursuant to the in-
   demnity agreement.

2. **Negligence § 53.1— duty of reasonable care for protection of invitee—knowl-
   edge of dangerous condition by invitee—summary judgment improper**

   In an action where plaintiff's employee was injured while working on a
   spur track serving defendant's Mecklenburg plant, the case should have been
   allowed to proceed to the jury on the theory of common law negligence since
   the injured person, as an employee of plaintiff working on defendant's proper-
   ty, was an invitee of defendant, and since defendant was required to exercise
   reasonable care for the protection of its invitees under the circumstances; and
   the circumstances here included defendant's knowledge that plaintiff's
   employee, despite his knowledge of a slippery condition caused by defendant's
   feed being on tracks, had no choice but to encounter the dangerous condition
   in the fulfillment of the duties of his employment.

APPEAL by plaintiff from *Allen, Judge.* Judgment entered 18
June 1981, in Superior Court, MECKLENBURG County. Heard in
the Court of Appeals 30 April 1982.

*Jones, Hewson & Woolard, by Hunter M. Jones and Harry C.
Hewson, for plaintiff appellant.*

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston,
by William E. Poe and Irvin W. Hankins, III, for defendant ap-
pellee.*

WHICHARD, Judge.

Plaintiff instituted this action to collect from defendant $52,987.53 which plaintiff had paid to its employee who was injured while working on a spur track serving defendant's Mecklenburg County plant. The basis of the action was an indemnity provision of contracts in which plaintiff and defendant's predecessor in title agreed on the terms and conditions for the location and operation of the spur track on which the employee was injured.

The trial court granted defendant's motion for summary judgment. Plaintiff appealed, raising as issues (1) whether the court correctly interpreted the indemnity agreement, and (2) whether it properly withheld from the jury the question of defendant's negligence.

We find that summary judgment was improperly entered, and accordingly reverse.

I.

Plaintiff and Interstate Milling Company (Interstate) entered a contract under which plaintiff agreed to relocate, reconstruct, and operate two industrial railroad tracks (spur tracks) to serve Interstate. Interstate agreed, among other things, to the following indemnity clause:

> 5. That it [Interstate] will indemnify and save harmless the Railroad [plaintiff] against any and all damage resulting from negligence of the party of the second part [Interstate], its servants and employees, in and about said industrial tracks and the right of way therefor . . . .

Subsequently the parties entered a second contract in which plaintiff agreed to construct and operate an extension to one of the two spur tracks. The second contract contained an indemnity clause identical to that in the first except that it related to the spur track extension.

Interstate thereafter deeded to defendant the property on which the spur tracks were located. It also transferred to defendant the business it had operated. Defendant continued operation of the business under the name Interstate Milling Company, a subsidiary of ADM Milling Company. Plaintiff alleged that defend-

ant succeeded to the benefits of the spur track contracts; and that by contract, express or implied, or by operation of law, it assumed the obligations set forth in those contracts.

Lloyd L. Whitson, an employee of plaintiff, was injured on defendant's spur tracks while switching railroad cars. Plaintiff paid Whitson's medical and hospital expenses and made a compromise settlement of its potential liability to him under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* While negotiating the settlement, plaintiff sought from defendant indemnification pursuant to the indemnity clauses of the two contracts. Defendant refused to extend any authority to plaintiff's agents in the negotiations and to consent to any reimbursement.

After settlement with Whitson plaintiff instituted this action against defendant for indemnification under the terms of the contracts. Defendant answered, denying its negligence; denying that its negligence, if any, was the proximate cause of Whitson's injuries; and asserting the affirmative defense of contributory negligence. After extensive discovery, defendant's motion for summary judgment was granted.

Plaintiff appealed.

## II.

The purpose of summary judgment under G.S. 1A-1, Rule 56, is to bring litigation to an early decision on the merits, without the delay and expense of trial, where it can be readily shown that no material facts are in issue. *Kessing v. Mortgage Corp.,* 278 N.C. 523, 534, 180 S.E. 2d 823, 830 (1971). Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that one of the parties is entitled to judgment as a matter of law. *Id. See also Treadway v. Railroad Co.,* 53 N.C. App. 759, 762-63, 281 S.E. 2d 707, 710 (1981). The court here determined, pursuant to this standard, that only a question of law on undisputed facts was in controversy; and that the question could be resolved without "the delay and expense of a trial." *Id.* at 533, 180 S.E. 2d at 829.

## III.

[1] Plaintiff first argues that the intent of the parties to the contracts was that defendant would indemnify plaintiff against

liabilities under the Federal Employers' Liability Act (FELA), and that the question of defendant's negligence under FELA standards thus should have been submitted to the jury. Under the FELA, a common carrier, including a railroad, is liable to its employees for injury or death resulting in whole or in part from the negligence of its officers, agents, or employees, or "by reason of any defect or insufficiency, due to its negligence, in its cars, engines . . . , track, [or] roadbed." 45 U.S.C. § 51. What constitutes negligence under the FELA is a federal question. *Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282, 1295 (1949); *see also Treadway*, 53 N.C. App. at 760, 281 S.E. 2d at 709. The United States Supreme Court has defined negligence as "the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done." *Tiller v. Atlantic Coast Line R. Co.*, 318 U.S. 54, 67, 63 S.Ct. 444, 451, 87 L.Ed. 610, 617 (1943). Although contributory negligence by an employee may diminish his damages in proportion to his negligence, it is not a defense to the action. 45 U.S.C. § 53. Further, the carrier-employer is barred from defending on the basis of assumption of risk. 45 U.S.C. § 54. The burden of establishing liability for negligence thus is considerably less imposing under the FELA than under the common law of North Carolina.

The sections of the parties' contracts which pertain to indemnification control whether defendant's potential liability is to be judged by FELA standards. A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties. 42 C.J.S., Indemnity, § 12(a), p. 579. The intent of the parties to the contract is to be ascertained from the language used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time. *Lane v. Scarborough*, 284 N.C. 407, 410, 200 S.E. 2d 622, 624 (1973).

The contracts here do not specifically refer to the FELA. Such omission, however, has not been determinative in similar cases in other jurisdictions. In *Chicago, R.I. & P.R. Co. v. Dobry Flour Mills*, 211 F. 2d 785 (10th Cir.), *cert. denied*, 348 U.S. 832, 75 S.Ct. 55, 99 L.Ed. 656 (1954), *e.g.*, the relevant contract clause stated that the defendant agreed "to indemnify and hold harmless

the Trustees for loss, damage or injury from *any act or omission* of the [defendant], its employees or agents." (Emphasis supplied.) The court construed "act or omission" to allow a determination of liability based upon the law making plaintiff liable to its injured employee, *viz.,* the FELA, rather than upon defendant's common law liability. Similarly, in *Steed v. Central of Georgia Ry. Co.,* 529 F. 2d 833 (5th Cir.), *cert. denied,* 429 U.S. 966, 97 S.Ct. 396, 50 L.Ed. 2d 334 (1976), the phrase "act or omission" in an indemnity clause was interpreted to mean liability for the indemnitor under the law which would make the railroad liable to its injured employee, again the FELA. Finally, in *Georgia Ports Auth. v. Cent. of Georgia Ry.,* 135 Ga. App. 859, 219 S.E. 2d 467 (1975), the court held that the phrase "negligence or other causes" in the indemnity clause of a contract included any of the indemnitor's wrongful or negligent acts which would impose liability upon the railroad under FELA standards as well as under common law negligence standards. The court noted that it was not necessary for the indemnity clause to refer expressly to the FELA because "[t]he parties to such an agreement are held to have known of the existence of the federal statute at the time they executed their agreement." *Id.* at 862, 219 S.E. 2d at 470.

In *Beachboard v. Railway Co.,* 16 N.C. App. 671, 193 S.E. 2d 577 (1972), *cert. denied,* 283 N.C. 106, 194 S.E. 2d 633 (1973), this Court reviewed an indemnity agreement identical to those here. Plaintiff there, an employee of Southern Railway Company, sued Southern for damages from injuries sustained while he was working on a side track owned by the third-party defendant, Champion Papers, Inc. Employees of Champion shoved five railroad cars onto the track where plaintiff was working. Those cars hit two cars on which plaintiff was opening the knuckles. Plaintiff was dragged beneath these cars, and the wheels severed his legs. The jury found Champion negligent; and Champion appealed, contending, *inter alia,* that the court should have submitted to the jury the issue of plaintiff's contributory negligence. In rejecting this contention, this Court, per Judge Parker, stated:

> Southern's third-party action against Champion was not predicated upon Champion's liability to plaintiff under the general law of torts, under which plaintiff's contributory negligence would have been a defense, but upon the indemnity contract under which Champion became obligated to in-

demnify and save harmless Southern "against any and all damage resulting from the negligence" of Champion. The jury determined that plaintiff's injuries did result from Champion's negligence. As a consequence of that negligence, Southern became obligated to plaintiff under F.E.L.A. for its failure to furnish him a safe place to work, and Champion in turn by contract became obligated to indemnify and save harmless Southern. Under these circumstances the contributory negligence of plaintiff, if any existed, would not have been a defense to Southern's contract action against Champion to enforce the indemnity agreement. *Chicago, R.I. & P.R. Co. v. Dobry Flour Mills*, 211 F. 2d 785 (10th Cir. 1954), cert. denied, 348 U.S. 832; Annotation: "Claim, for Contribution or Indemnity Against Joint Tortfeasor, of Employer Liable to Employee under Federal Employer's [sic] Liability Act, As Affected by Contributory Negligence of Employee," 6 A.L.R. 3d 1307. Plaintiff's contributory negligence, if any, was available in mitigation of damages in plaintiff's F.E.L.A. action against Southern, but . . . in this case the amount of plaintiff's recovery was ultimately settled by the consent judgment . . . in which all parties, including Champion, joined.

*Id.* at 681-82, 193 S.E. 2d at 584.

This case is identical to *Beachboard* in the following respects: (1) plaintiff was obligated under the FELA to provide for its employees a safe place to work; (2) plaintiff obligated itself by contract to perform acts and render services in connection with defendant's privately owned railroad tracks and right-of-way which it was not obligated to perform for the public generally, *see id.* at 680, 193 S.E. 2d at 583; and (3) as part of the consideration for plaintiff's incurring that obligation, defendant promised to "indemnify and save harmless" the plaintiff "against any and all damage" resulting from defendant's negligence. The court in *Beachboard* obviously believed the FELA determinative of Southern's liability to its employee, and believed Champion to be liable to Southern pursuant to the indemnity agreement for any liability Southern incurred to its employees under the FELA on account of Champion's negligence.

Such must equally be the case here. The record raises an issue as to plaintiff's negligence and consequent liability to its

employee, Whitson, as determined by the standards imposed by the FELA, discussed *supra*; as to whether plaintiff's liability was occasioned by defendant's negligence, again as determined by the FELA standard, *see Chicago, R.I. & P.R. Co., Steed*, and *Beachboard, supra*; and as to defendant's liability, if so, to plaintiff, pursuant to the indemnity agreement. The granting of defendant's motion for summary judgment thus was error.

IV.

[2]  We further agree with plaintiff's second contention, *viz.*, that even if FELA standards were not implicated, the case should have been allowed to proceed on the theory of common law negligence. Whitson, as an employee of plaintiff working on defendant's property, was an invitee of defendant. *Cf. Spivey v. Wilcox Company*, 264 N.C. 387, 141 S.E. 2d 808 (1965) (employee of independent contractor, who had undertaken to install plumbing fixtures on defendant's premises, was an invitee of defendant). Defendant's duty to Whitson, therefore, was to exercise ordinary care to keep the premises in a reasonably safe condition so as not to expose him unnecessarily to danger, and to give warning of hidden conditions and dangers of which it had express or implied knowledge. *Wrenn v. Convalescent Home*, 270 N.C. 447, 154 S.E. 2d 483 (1967).

An owner or occupier of land ordinarily has no duty to warn of an obvious condition of which its invitee has equal or superior knowledge. *Id.*

> But this is certainly not a fixed rule, and *all of the circumstances must be taken into account.* In any case where the occupier, as a reasonable man, should anticipate an unreasonable risk of harm to the invitee *notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required.* . . . It is true also where the condition is one such as icy steps, which cannot be negotiated with reasonable safety even though the invitee is fully aware of it, and, because the premises are held open to him for his use, *it is to be expected that he will nevertheless proceed to encounter it. In all such cases the jury may be permitted to find that obviousness, warning or even knowledge is not enough.*

W. Prosser, *Handbook of the Law of Torts*, § 61, pp. 394-95 (4th Ed. 1971) (emphasis supplied).

The undisputed facts of the accident here are set forth in Whitson's deposition as follows: Whitson was working as a switchman for plaintiff on defendant's property when he slipped from a railroad car and injured himself. He attributed his fall to slippery conditions caused by feed from defendant's plant. He stated that when "you get [feed] on your feet it's just like being on ice." He had been aware of the danger for many years. He stated: "From 1968 up until 1977 I was working at Interstate and during all that time of nine years I was slipping from time to time. . . . For the nine years I saw the same conditions over there and slipped time after time." Defendant never swept the area clean in response to complaints about the condition of the tracks.

While the deposition clearly establishes that Whitson had knowledge of the obvious condition equal or superior to that of defendant, under the particular facts there was nevertheless a jury question as to whether defendant fulfilled its responsibility to keep the premises in a reasonably safe condition so as not to expose Whitson to unnecessary dangers. The cases cited by plaintiff, *Long v. Methodist Home*, 281 N.C. 137, 187 S.E. 2d 718 (1972); *Wrenn v. Convalescent Home, supra; Little v. Oil Corp.*, 249 N.C. 773, 107 S.E. 2d 729 (1959); *Phillips v. Industries, Inc.*, 44 N.C. App. 66, 259 S.E. 2d 769 (1979); and *Brady v. Coach Co.*, 2 N.C. App. 174, 162 S.E. 2d 514 (1968), all involved situations in which the injured person recognized or should have recognized a one-time danger, and nevertheless elected to proceed. Here, by contrast, the record permits a finding that Whitson's job required that he work on the spur tracks on defendant's property and encounter the problem of slipping on the feed "time after time"; and that defendant was cognizant of that requirement. The slippery tracks could not "be negotiated with reasonable safety even though" Whitson was fully aware of the condition; and, because defendant's spur tracks were "held open to [Whitson] for his use," defendant should have expected that Whitson would "proceed to encounter" the slippery tracks. W. Prosser, *supra*, at pp. 394-95. Under these circumstances, reasonable care may have required more than a warning of the danger.

In *Peterson v. W. T. Rawleigh Co.*, 274 Minn. 495, 144 N.W. 2d 555 (1966), the court allowed recovery to an employee who was

injured when he slipped and fell on ice. At the time of his injury, the employee was picking up an order of household goods to deliver for defendant. The Minnesota Supreme Court adopted the following from the *Restatement (Second) of Torts* § 343A(1) (1965):

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.* [Emphasis supplied.]

Comment f under this section states:

There are . . . cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

. . . Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of the risk. . . . It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.

Defendant was not required to take extraordinary precautions for the safety of its invitees, *Gaskill v. A. and P. Tea Co.*, 6 N.C. App. 690, 694, 171 S.E. 2d 95, 97 (1969), or to take precautions that would render the operation of its business impractical, *Hedrick v. Tigniere*, 267 N.C. 62, 67, 147 S.E. 2d 550, 554 (1966). It was, however, required to exercise reasonable care for the protection of its invitees under the circumstances; and the circumstances here included defendant's knowledge that plaintiff's

employee, despite his knowledge of the obvious dangerous condition, had no choice but to encounter it in the fulfillment of the duties of his employment. Whether defendant's failure to take additional precautions for the employee's safety was reasonable under these circumstances was for the jury to determine.

Reversed and remanded.

Judges WEBB and WELLS concur.