SHARON R. COOK, Executrix of the Estate of EVERETT E. COOK, Plaintiff v. JAMES MONROE MORRISON d/b/a MORRISON SEPTIC TANK AND CONSTRUCTION COMPANY and DAVID H. OSTEEN, Defendants

No. 9129SC397

(Filed 3 March 1992)

1. **Master and Servant § 3.1 (NCI3d) — death of worker in trench — liability of developer — independent contractor**

    Summary judgment was correctly granted for defendant Osteen in a wrongful death action based on respondeat superior where Osteen bought a piece of real estate which he later decided to develop; defendant was a truck driver by trade and had never built a house as a general contractor other than his own, although he held a residential contractor's license; defendant had an engineer design a sewer system for his property and entered into an oral contract with James Morrison, the sole proprietor of Morrison Construction and Septic Tank Company, to install the system; Morrison hired plaintiff's decedent; and plaintiff's decedent was killed when a trench collapsed during installation of the system. The evidence produced at the summary judgment hearing does not show that defendant retained any right to control and direct the manner in which Morrison executed the details of his task and, to the contrary, shows that Morrison was an independent contractor.

    **Am Jur 2d, Independent Contractors §§ 6-9.**

2. **Negligence § 50 (NCI3d) — developer — contractor's employee killed in trench cave-in — no knowledge of circumstances**

    Summary judgment was properly entered for defendant landowner in a wrongful death action arising from the death of a contractor's employee in a trench cave-in where, assuming that the forecast of evidence was sufficient to establish a genuine issue of material fact as to whether the trenching was inherently dangerous, the facts do not show that the defendant knew or should have known of the circumstances creating the danger to which the decedent was exposed. The general rules on the tort liability of owners and occupiers of land to invitees do not apply to the actual work undertaken by independent contractors and their employees. Unless the activity undertaken is inherently dangerous, an owner or oc-

COOK v. MORRISON

[105 N.C. App. 509 (1992)]

cupier of land who hires an independent contractor is not required to provide employees of the independent contractor a safe place to work nor is he required to take proper safeguards against dangers which may be incident to the work undertaken by the independent contractor. If the activity is inherently dangerous and the owner or occupier of the land knows or should know of the circumstances creating the danger, then the owner or occupier of the land has a nondelegable duty to the independent contractor's employees.

**Am Jur 2d, Independent Contractors §§ 40-43.**

**Liability of employer with regard to inherently dangerous work for injuries to employees of independent contractor. 34 ALR4th 914.**

3. **Master and Servant § 21 (NCI3d) — death of contractor's employee — negligent hiring of contractor — summary judgment for defendant**

Summary judgment was properly granted for defendant landowner on a negligent hiring claim arising from the death of a contractor's employee in a trench cave-in. The Court of Appeals in *Woodson v. Rowland*, 92 N.C. App. 38, refused to recognize any duty flowing from the one hiring the independent contractor to the independent contractor's employee and, because the North Carolina Supreme Court did not disavow that holding nor the reasoning underlying it, the Court of Appeals is bound by it in this case.

**Am Jur 2d, Independent Contractors § 26.**

**When is employer chargeable with negligence in hiring careless, reckless, or incompetent independent contractor. 78 ALR3d 910.**

APPEAL by plaintiff from order entered 12 February 1991 in HENDERSON County Superior Court by *Judge Loto Greenlee Caviness*. Heard in the Court of Appeals 18 February 1992.

*Shuford, Best, Rowe, Brondyke & Wolcott, by Patricia L. Arcuri and James Gary Rowe, for plaintiff-appellant.*

*Blue, Fellerath, Cloninger & Barbour, P.A., by John C. Cloninger, for defendant-appellee David H. Osteen.*

GREENE, Judge.

Plaintiff appeals from an order entered 12 February 1991 granting defendant David Osteen's motion for summary judgment.

Viewed in the light most favorable to the plaintiff, the evidence produced at the summary judgment hearing tends to show the following: In December, 1986, David Osteen (defendant) bought a piece of real estate located in Henderson County, North Carolina now known as the Sunny Pines Subdivision. Sometime in the early months of 1987, the defendant decided to develop the land. Although the defendant held a residential contractor's license, he was a truck driver by trade. He had never built a house as a general contractor, other than his own home, and when he built his own home, he had nothing to do with installing the septic system. Furthermore, the defendant did not know how to dig a trench or install a sewer system.

To begin developing his property, the defendant had an engineer design a sewer system for his property. He then entered into an oral contract with James Morrison (Morrison), the sole proprietor of Morrison Construction and Septic Tank Company (Morrison Company), to install the sewer system on the defendant's property at a cost of $3.40 per foot. The system was to consist of a treatment plant and sewer lines. Morrison ordered the materials needed for the job, and Morrison Company began working on about 1 July 1987. Morrison supplied the equipment needed for the job. Although Morrison could not recall whether he had the authority under the contract to hire employees for the job, he testified that he normally used his own employees to install sewer systems, and for this job, he hired several employees. One of his employees was Everett Cook (Cook). No one besides Morrison instructed Morrison's employees as to what they were to do and how they were to do it. The only people that the defendant had on the job site were the defendant's son and a friend of his son. They helped carry pipe and retrieve materials for Morrison's employees. Neither Morrison nor the defendant paid these people for their help. During the time period of this job, Morrison submitted bids for other projects for septic tank installation. With regard to the other jobs Morrison had at this time, he, not the defendant, decided when his crew would work at the defendant's property and when they would work elsewhere. To the best of the plaintiff's knowledge, however, Cook worked only on this job site.

The defendant visited the site about every other day usually during his lunch hour to check on Morrison's progress. Occasionally, the defendant gave instructions and made suggestions to Morrison about the work related to engineering requirements as set out in the blueprints for the sewer system, including the need for a certain piece of equipment, where to start, where to place the treatment plant, where to place the manholes, and how much dirt had to be on top of the pipe. Morrison, however, was in charge of digging the trench and installing the sewer system.

On 4 August 1987, Cook and two other employees were working in a newly excavated trench which was approximately twenty-six feet long, five feet wide, and thirteen feet deep when part of the trench collapsed killing Cook. The walls of the trench were vertical and had not been shored, sloped, braced, or otherwise supported to prevent a collapse. Furthermore, material removed from the trench was stored about six inches from the edge of the trench. The North Carolina Department of Labor cited Morrison for violations of the Occupational Safety and Health Act because of the absence of proper support for the walls of the trench and because of the closeness to the edge of the trench of the material removed from it. Morrison explained that the trench had not yet been prepared because he was still digging it at the time of the accident. He further explained that because his employees knew better than to enter an unprepared trench, he did not know why Cook and the other two employees were in this one. He testified that this was the first time that any of his employees had been in an unprepared trench on this job. At the time of the accident, Morrison was operating a backhoe and did not observe the collapse, and the defendant was not present at the site.

Sharon Cook (plaintiff) is the executrix of Cook's estate. On 25 July 1989, she filed this wrongful death action against the defendant and Morrison. She alleged that the defendant was liable to her for her husband's death on four theories: (1) *respondeat superior*, (2) breach of duty to an invitee, (3) breach of nondelegable duty, and (4) negligent hiring of an independent contractor. On 20 November 1990, the defendant filed a summary judgment motion which was granted on 12 February 1991.

---

The issues are (I) whether the forecast of the evidence shows that Morrison was the defendant's employee; (II) whether the forecast

of the evidence shows that the defendant knew or should have known of the circumstances creating the danger to which Cook was exposed for purposes of the plaintiff's cause of action against the defendant as a landowner; (III) whether the forecast of the evidence shows that the defendant knew or should have known of these same circumstances for purposes of the plaintiff's cause of action against the defendant for breach of a nondelegable duty; and (IV) whether the estate of an employee of an independent contractor may obtain relief from a party who negligently hires the independent contractor.

I

Independent Contractor or Employee

[1] The plaintiff argues that summary judgment on the issue of the defendant's liability under the doctrine of *respondeat superior* was improper because genuine issues of material fact exist as to whether Morrison was the defendant's employee. *See Harris v. Miller*, 103 N.C. App. 312, 322, 407 S.E.2d 556, 561, *appeal filed and disc. rev. allowed*, 329 N.C. 788, 408 S.E.2d 520 (1991) (employer-employee relationship required for liability under doctrine of *respondeat superior*).

An independent contractor is "one who exercises an independent employment and contracts to do certain work according to his own judgment and method, without being subject to his employer except as to the result of his work." *Youngblood v. North State Ford Truck Sales*, 321 N.C. 380, 384, 364 S.E.2d 433, 437, *reh'g denied*, 322 N.C. 116, 367 S.E.2d 923 (1988). Where, however, the hiring party "retains the right to control and direct the manner in which the details of the work are to be executed," the working party is the hiring party's employee, not an independent contractor. *Id.* Whether the hiring party retains the right to control and direct the manner in which the working party executes the details of his task depends upon various factors which must be considered when implicated by the evidence. *Id.* at 384-86, 364 S.E.2d at 437-39; *Hayes v. Elon College*, 224 N.C. 11, 16, 29 S.E.2d 137, 140 (1944). When viewed in the light most favorable to the plaintiff, the evidence and the factors it implicates compel the conclusion that Morrison was an independent contractor. *Yelverton v. Lamm*, 94 N.C. App. 536, 538-39, 380 S.E.2d 621, 623 (1989) (whether working party is independent contractor or employee is question of law for court where evidence is susceptible of only one conclusion).

First, the defendant had agreed to pay Morrison $3.40 per foot for a specific task, a factor indicative of contractorship. *Hayes*, 224 N.C. at 16, 29 S.E.2d at 140 (specific piece of work upon quantitative basis indicates contractorship). Second, Morrison supplied the equipment and ordered the supplies used on the job site, factors indicative of contractorship. 1C A. Larson, The Law of Workmen's Compensation § 44.34(a) (1991) [hereinafter 1C Larson]. Third, although the defendant was not in the business of installing sewer systems, Morrison was engaged in this type of business, Morrison Company, and these factors indicate contractorship. *Hayes*, 224 N.C. at 16, 29 S.E.2d at 140; Restatement (Second) of Agency § 220(2)(b), (h) (1957). Fourth, although the defendant volunteered his son and a friend to the job site, Morrison hired his own employees for the job. "The freedom to employ such assistants as the . . . [working party] may think proper indicates contractorship." *Youngblood*, 321 N.C. at 384, 364 S.E.2d at 438. Fifth, Morrison had full control over his employees, a factor indicative of contractorship. *Hayes*, 224 N.C. at 16, 29 S.E.2d at 140. Sixth, Morrison decided when his employees would work on the defendant's project and when they would work elsewhere, a factor indicative of contractorship. *Youngblood*, 321 N.C. at 385, 364 S.E.2d at 438. Finally, Morrison believed that he was not the defendant's employee, a factor indicative of contractorship. Restatement (Second) of Agency § 220(2)(i). All of the factors implicated by the evidence suggest that Morrison was an independent contractor, not an employee. That the defendant occasionally gave instructions and made suggestions to Morrison concerning engineering requirements set out in the blueprints for the sewer system does not create an employer-employee relationship. As Professor Larson explains:

> An owner, who wants to get work done without becoming an employer, is entitled to as much control of the details of the work as is necessary to ensure that he gets the end result from the contractor that he bargained for. In other words, there may be a control of the quality or description of the work itself, as distinguished from control of the person doing it, without going beyond the independent contractor relation.

1C Larson, *supra*, § 44.21. The evidence produced at the summary judgment hearing does not show that the defendant retained any right to control and direct the manner in which Morrison executed the details of his task. To the contrary, the evidence shows that

Morrison was an independent contractor. Accordingly, summary judgment for the defendant on this cause of action was proper.

## II

### Owner-Invitee

[2] The plaintiff argues that summary judgment on her claim against the defendant as a landowner was improper because genuine issues of material fact exist as to whether the defendant breached his duty of care to Cook, an invitee.

While working on the defendant's land as an employee of an independent contractor, Cook was an invitee of the defendant. *Spivey v. Babcock & Wilcox Co.*, 264 N.C. 387, 388, 141 S.E.2d 808, 810 (1965). The defendant therefore owed Cook the duty "to exercise ordinary care to keep the premises in a reasonably safe condition so as not to expose him unnecessarily to danger, and to give warning of hidden conditions and dangers of which . . . [he] had express or implied knowledge." *Southern Ry. Co. v. ADM Milling Co.*, 58 N.C. App. 667, 673, 294 S.E.2d 750, 755, *disc. rev. denied*, 307 N.C. 270, 299 S.E.2d 215 (1982); *Spivey*, 264 N.C. at 388-89, 141 S.E.2d at 810 (defendant owed duty to employee of independent contractor to warn of hidden danger in its plant). The defendant had no duty, however, to warn Cook of an obvious condition on the land of which Cook had equal or superior knowledge, unless the defendant should have anticipated an unreasonable risk of harm to Cook notwithstanding the obviousness of the condition. *Southern*, 58 N.C. App. at 673, 294 S.E.2d at 755. In such cases, the particular circumstances may require the owner or occupier of the land to take precautions beyond warning the invitee of the obvious condition. *Id.* at 674, 294 S.E.2d at 756.

These general rules on the tort liability of owners and occupiers of land to invitees, however, do not apply to the actual work undertaken by independent contractors and their employees. Unless the activity undertaken is inherently dangerous, an owner or occupier of land who hires an independent contractor is not required to provide employees of the independent contractor a safe place to work nor is he required to take proper safeguards against dangers which may be incident to the work undertaken by the independent contractor. *Brown v. Texas Co.*, 237 N.C. 738, 741, 76 S.E.2d 45, 46-47 (1953); 62 Am. Jur. 2d *Premises Liability* § 457 (1990). If, however, the activity is inherently dangerous *and*

the owner or occupier of the land knows or should know of the circumstances creating the danger, then the owner or occupier of the land has the nondelegable duty to the independent contractor's employees "to exercise due care to see that . . . [these employees are] provided a safe place in which to work and proper safeguards against any dangers as might be incident to the work [are taken]." *Woodson v. Rowland,* 329 N.C. 330, 357, 407 S.E.2d 222, 238 (1991) (where general contractor hired subcontractor to perform alleged inherently dangerous activity, general contractor liable for breach of nondelegable duty of care if it knew of circumstances creating danger).

Assuming *arguendo* that the forecast of the evidence at the summary judgment hearing is sufficient to establish a genuine issue of material fact as to whether the trenching was inherently dangerous, *id.* at 354, 407 S.E.2d at 236, there is no evidence in the record demonstrating that the defendant knew or should have known of the circumstances creating the danger to which Cook was exposed. Although the defendant, a truck driver by trade, held a residential contractor's license, he had never built a house as a general contractor other than the one he owned, and on that house he was not involved, even in a supervisory capacity, in installing the septic system. Although the defendant visited the site approximately every other day and occasionally gave instructions and made suggestions as to how Morrison should comply with various engineering requirements, the defendant did not know how to dig a trench, did not know what "shoring" a trench meant prior to Morrison's deposition, and testified that if Morrison had been improperly installing the system, he would not have known it. Finally, Morrison testified that to his knowledge the defendant would not have seen men in a trench before the dirt had been moved away from the edges of it because the day of the accident was the first time anyone had been in such a trench. Because these facts do not show that the defendant knew or should have known of the circumstances creating the danger to which Cook was exposed, summary judgment for the defendant was proper on this cause of action.

## III

### Nondelegable Duty

The plaintiff argues that the trial court erred in granting summary judgment on her claim for breach of the nondelegable duty to ensure that Morrison was taking adequate safety precautions.

COOK v. MORRISON

[105 N.C. App. 509 (1992)]

On these facts, this cause of action is essentially identical to the plaintiff's cause of action for liability based upon the defendant's ownership of the land upon which Cook was killed. Unless the activity undertaken is inherently dangerous, one who hires an independent contractor is not required to provide employees of the independent contractor a safe place to work nor is he required to take proper safeguards against dangers which may be incident to the work undertaken by the independent contractor. *Id.* at 350-57, 407 S.E.2d at 234-38. If, however, the activity is inherently dangerous *and* the party who hired the independent contractor knows or should know of the circumstances creating the danger, then he has the nondelegable duty to the independent contractor's employees "to exercise due care to see that . . . [these employees are] provided a safe place in which to work and proper safeguards against any dangers as might be incident to the work [are taken]." *Id.* at 357, 407 S.E.2d at 238. Again, assuming *arguendo* that the forecast of the evidence is sufficient to establish a genuine issue of material fact as to whether the trenching was inherently dangerous, because there was no evidence in the record demonstrating that the defendant knew or should have known of the circumstances creating the danger to which Cook was exposed, summary judgment for the defendant was proper.

IV

Negligent Hiring

[3] The plaintiff argues that summary judgment on her negligent hiring claim was improper because genuine issues of material fact exist as to whether the defendant negligently hired Morrison.

In *Woodson v. Rowland*, 92 N.C. App. 38, 46-47, 373 S.E.2d 674, 678-79 (1988), *aff'd in part and rev'd in part*, 329 N.C. 330, 407 S.E.2d 222 (1991), this Court addressed the issue of whether one who hires an independent contractor is under a duty to the independent contractor's employees to select the independent contractor with reasonable care. Stated differently, the issue is "whether an injured employee of the incompetent or unqualified independent contractor can obtain relief from the party who negligently hired or retained the independent contractor." *Woodson*, 329 N.C. at 358, 407 S.E.2d at 239. This Court refused to recognize any duty flowing from the one hiring the independent contractor to the independent contractor's employee. *Woodson*, 92 N.C. App. at 46-47, 373 S.E.2d at 678-79. Because the North Carolina Supreme Court

did not disavow this Court's holding nor the reasoning underlying it, *Woodson*, 329 N.C. at 358, 407 S.E.2d at 239, we are bound by it and conclude that summary judgment for the defendant on this cause of action was proper. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (panel of Court of Appeals bound by decisions of prior panels unless overturned by higher court). We note, however, that courts in other states have resolved this issue contrary to the position taken by this Court. *See, e.g., Cassano v. Aschoff*, 543 A.2d 973, 975 (N.J. Super. Ct. App. Div.), *cert. denied*, 550 A.2d 476 (N.J. 1988); *Schlenk v. Northwestern Bell Tel. Co.*, 329 N.W.2d 605, 614 (N.D. 1983).

Accordingly, the trial court's order granting the defendant's motion for summary judgment is

Affirmed.

Judges JOHNSON and COZORT concur.