IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-1021

Filed: 7 January 2020

Orange County, No. 17 CVS 162

WILLIAM EVERETT COPELAND IV and CATHERINE ASHLEY F. COPELAND, Co-Administrators of the ESTATE OF WILLIAM EVERETT COPELAND, Plaintiffs,

v.

AMWARD HOMES OF N.C., INC., CRESCENT COMMUNITIES, LLC; and CRESCENT HILLSBOROUGH, LLC, Defendants.

Appeal by plaintiffs from order entered 7 May 2018 by Judge W. Osmond Smith III in Orange County Superior Court. Heard in the Court of Appeals 12 February 2019.

*Edwards Kirby, LLP, by David F. Kirby and William B. Bystrynski, and Holt Sherlin LLP, by C. Mark Holt and David L. Sherlin, for plaintiffs-appellants.*

*Cranfill Sumner & Hartzog LLP, by Susan K. Burkhart and F. Marshall Wall, for defendants-appellees.*

DIETZ, Judge.

Five-year-old Everett Copeland died after an overloaded dump truck rolled away and struck him as he played near his home. The dump truck was left unattended, with its engine running and without wheel chocks, at a home construction site up a hill from the Copeland's home.

This case screams of negligence—by the dump truck driver, by the company that operated the dump truck, perhaps even by the general contractor responsible for

supervising the operation. This appeal involves none of those parties.

This case concerns negligence claims against the real estate developer who designed the planned community where the accident occurred. The Copelands argue that the developer—although it sold the lots to independent builders to handle construction—retained a duty to develop a safety plan, sequence the project to minimize harm from construction accidents, and conduct inspections of builders' progress.

Most of the Copelands' theories of legal duty are barred by settled tort principles established by our Supreme Court. A real estate developer, like anyone else, may hire a contractor to perform a service such as building a home, and has no duty to supervise that contractor's work. *Woodson v. Rowland*, 329 N.C. 330, 350, 407 S.E.2d 222, 234 (1991). Similarly, a real estate developer, like anyone else, has no duty to imagine all of the harms that might be caused by other people's negligence and then to take precautionary steps to avoid those harms. *Chaffin v. Brame*, 233 N.C. 377, 380, 64 S.E.2d 276, 279 (1951).

Still, as explained below, the Copelands have advanced a theory of legal duty that survives summary judgment under these principles. They have forecast evidence that this development occurred on unusually steep, hilly terrain; that the construction would involve heavy equipment and materials; that there were foreseeable risks of roll-aways during construction; and that a reasonably prudent

developer would take steps to sequence construction or grade the area in advance to avoid foreseeable harm caused by these construction accidents. There are genuine issues of material fact on this theory of duty and we therefore reverse and remand for further proceedings on this legal claim.

## Facts and Procedural History

The following recitation of facts represents the Copelands' version of events, viewed in the light most favorable to them. As the non-movant at the summary judgment stage, this Court must accept the Copelands' evidence as true. *See Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000).

In 2013, Defendants Crescent Communities, LLC and Crescent Hillsborough, LLC, to which we refer collectively as "Crescent," began developing a residential planned community known as Forest Ridge. Crescent purchased more than 100 acres of steep, hilly land as the future site of the development.

Crescent recorded the necessary instruments to subdivide the site and create applicable covenants and declarations typical of planned communities. The company then sold lots to builders, who constructed homes consistent with the overall aesthetic and design elements of the community.

Although Forest Ridge is situated on hilly terrain, Crescent did not mass grade the entire community before selling lots to builders—meaning at least some of the lots had to be individually graded before a home could be built on them. "Grading" is

the process of ensuring the earth on which construction will take place is either level, or appropriately sloped for the necessary construction. Grading typically involves heavy equipment including dump trucks, excavators, and bulldozers.

Crescent also did not sequence the construction of the community so that uphill lots were built before downhill ones. As a result, the Copelands moved into their home in Forest Ridge while at least some lots uphill from the Copelands' home had yet to be graded.

In late 2016, on a lot uphill from the Copelands' home, a subcontractor employed by the home builder began grading work. This grading work occurred on hilly, sloping terrain facing the Copelands' home. It involved a dump truck and heavy excavating equipment.

During the grading, the dump truck driver left the truck unattended. The dump truck was overloaded, had its engine running, and did not have wheel chocks. The truck broke free and rolled downhill. Five-year-old Everett Copeland was playing outside near his home. The dump truck struck and killed Everett.

The Copelands, as administrators of their son's estate, sued Crescent for wrongful death, asserting several theories of negligence. After a full opportunity for discovery, Crescent moved for summary judgment, arguing that it owed no legal duty to the Copelands. The trial court granted Crescent's motion for summary judgment. The Copelands timely appealed.

## Analysis

The Copelands appeal the trial court's grant of summary judgment in favor of Crescent. "Summary judgment is appropriate when viewed in the light most favorable to the non-movant, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *S.B. Simmons Landscaping & Excavating, Inc. v. Boggs*, 192 N.C. App. 155, 164, 665 S.E.2d 147, 152 (2008) (citations omitted). We review the trial court's grant of summary judgment *de novo*. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

To survive a motion for summary judgment in a negligence case, the plaintiff must establish a "prima facie case" by showing "(1) that defendant failed to exercise proper care in the performance of a duty owed plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances." *Lavelle v. Schultz*, 120 N.C. App. 857, 859–60, 463 S.E.2d 567, 569 (1995).

In their briefing, the parties focus entirely on the question of duty. "The duty of ordinary care is no more than a duty to act reasonably." *Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 364 N.C. 222, 226, 695 S.E.2d 437, 440 (2010). "The duty does

not require perfect prescience, but instead extends only to causes of injury that were reasonably foreseeable and avoidable through the exercise of due care." *Id.* The Copelands assert several independent theories of legal duty in this case and we address each in turn below.

I.      **Duty to inspect or monitor the construction site**

We begin with the Copelands' argument that Crescent had a duty to "routinely inspect the construction going on in its subdivision." Crescent designed this planned community and recorded an instrument containing covenants that included various architectural limits on homes constructed there. But the company did not actually build the homes. It sold the lots to builders, who would then construct homes consistent with the covenants and other restrictions included in the lot purchase agreement.

Those lot purchase agreements required builders to obtain permission from Crescent before clearing trees or grading the lot. There is evidence in the record showing the builder of the home from which the dump truck rolled away began grading the lot without permission from Crescent, and that the builder did not take routine safety measures such as installing a silt fence or creating a temporary gravel driveway. The Copelands argue that "Crescent violated the standard of care for a master developer because it failed to routinely inspect the construction going on in its subdivision" and that, had it done so, it would have discovered the builder's

unauthorized and unsafe grading work, halted it, "and Everett Copeland would not have been killed."

This theory of legal duty is barred by precedent. The builder was not an employee of Crescent. It was, at most, an independent contractor performing construction work on property that was part of a planned community designed and managed by Crescent. When one hires an independent contractor to perform work, there is no legal duty "to take proper safeguards against dangers which may be incident to the work undertaken by the independent contractor." *Cook v. Morrison*, 105 N.C. App. 509, 515, 413 S.E.2d 922, 926 (1992). The legal responsibility for the safe performance of that work rests entirely on the independent contractor. *Id.*

The only exception to this rule concerns "inherently dangerous activities." *See Woodson v. Rowland*, 329 N.C. 330, 352–53, 407 S.E.2d 222, 235–36 (1991). Our caselaw does not establish a bright-line rule for determining which activities are inherently dangerous, but home construction is not inherently dangerous. *Id.* Our Supreme Court has long held that ordinary building construction work is not "of that character which the policy of the law requires that the owner shall not be permitted to free himself from liability by contract with another for its execution." *Vogh v. F. C. Geer Co.*, 171 N.C. 672, 676, 88 S.E. 874, 876 (1916).

Were we to hold that owners of property on which homes are being constructed have a legal duty to monitor the builder's grading work, it would be an unprecedented

expansion of tort liability at odds with our Supreme Court's longstanding application of these negligence principles in the home construction context. As we have often explained, "this Court is not in the position to expand the law. Rather, such considerations must be presented to our Supreme Court or our Legislature." *Shera v. N.C. State Univ. Veterinary Teaching Hosp.*, 219 N.C. App. 117, 126, 723 S.E.2d 352, 358 (2012).

The Copelands also suggest that Crescent retained sufficient control over the project to subject itself to liability for the negligence of the builder or its subcontractors. *See Trillium Ridge Condo. Ass'n, Inc. v. Trillium Links & Vill.*, *LLC*, 236 N.C. App. 478, 489, 764 S.E.2d 203, 212 (2014). But this principle applies only in situations where the developer retains control over how the work is performed. In *Trillium Ridge*, for example, a developer hired a construction firm to act as "Asst Project Manager" but employees of the developer retained various "[c]onstruction duties & responsibilities." *Id.* at 490, 764 S.E.2d at 212.

Here, by contrast, there is no evidence that Crescent retained any construction responsibilities or had any control over the builder's decisions concerning grading work. To be sure, the declaration Crescent recorded when creating the Forest Ridge community imposed aesthetic restrictions on builders and required builders to obtain permission from Crescent before beginning various phases of construction. But there is no evidence that Crescent retained any control over the actual construction work

performed by the builders. Accordingly, we reject the Copelands' argument that Crescent had a legal duty to monitor or inspect the grading work of a subcontractor of the builder.

## II.    Duty to take precautions against negligent construction work

The Copelands next argue that when Crescent "decided to develop the Forest Ridge subdivision, it was undertaking a course of conduct that required it to exercise ordinary care to protect others from harm." This duty, according to the Copelands, included anticipating the risk of harm caused by negligent operation of heavy equipment at construction sites and taking reasonable precautionary steps to prevent that harm.

Again, this theory of duty is barred by precedent. "It is a well established principle in the law of negligence that a person is not bound to anticipate negligent acts or omissions on the part of others." *Chaffin v. Brame*, 233 N.C. 377, 380, 64 S.E.2d 276, 279 (1951). This principle has been repeated by our State's appellate courts many times. *Britt v. Sharpe*, 99 N.C. App. 555, 558, 393 S.E.2d 359, 361 (1990) (citing Supreme Court cases).

Here, undisputed facts in the record demonstrate that the driver of a dump truck at the construction site left the vehicle unattended, with its engine running, without wheel chocks. There is no dispute that the dump truck operator acted

negligently and that this negligence proximately caused Everett Copeland's death. The Copelands concede this in their reply brief.

The law *could* impose a duty on Crescent, as the developer of a large planned community, to anticipate potential negligence on construction sites within the community and to take precautionary steps to prevent harm should that occur. But the tort law of our State, as it exists today, does not impose that duty. *Chaffin*, 233 N.C. at 380, 64 S.E.2d at 279.

Some tort scholars have criticized this type of bright-line rule and argued that there should be a "duty to take precautions against the negligence of others" when "a reasonable person would recognize the existence of an unreasonable risk of harm to others through the intervention of such negligence." W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 33, p. 199 (5th ed. 1984). But that is not what our law holds today. And, as explained above, we do not have the authority to change settled common law tort principles established by our Supreme Court. *Shera*, 219 N.C. App. at 126, 723 S.E.2d at 358.

To be sure, *Chaffin* and its progeny carve out an exception when the defendant is aware of any fact "which gives or should give notice" that the negligence will occur. *Chaffin*, 233 N.C. at 380, 64 S.E.2d at 279. But that is not the case here. There is no evidence that Crescent was aware of the negligent activities of the dump truck operator. Accordingly, we must reject this theory of legal duty because it would

impose on a real estate developer a duty to take precautionary steps to protect against harm resulting from unknown negligence of others at a construction site. That theory is inconsistent with existing North Carolina law that the negligence of others is not reasonably foreseeable.

### III.    Duty to sequence construction or conduct mass grading

We thus turn to the Copelands' third, and final, theory of duty. This theory is unlike the other two in a critical way—it does not depend on Crescent having failed to address negligence at the construction site, either through adequate supervision or adequate precautions.

Instead, the Copelands argue that there was a risk that the dump truck could have broken loose and rolled downhill even without negligence at the construction site. This is so, they contend, because there *always* is a risk of roll-away accidents during construction on steep terrain. And, the Copelands argue, developers of large planned communities have the ability to limit any harm from these accidents in a way ordinary property owners do not. They contend that developers can choose the order in which homes in the development will be constructed and can choose which construction steps will occur all at once and which will occur lot-by-lot. Thus, the Copelands argue, developers of large projects on hilly terrain have a duty to sequence and manage construction to limit the risk that bystanders downhill might be harmed by foreseeable roll-away accidents.

We agree that the Copelands have forecast evidence creating a genuine issue of material fact on this theory of duty. They put forth experts who testified in depositions that there are various "hazards" and "risks" associated with roll-away equipment on hilly construction sites. Those experts testified that the risks of roll-away accidents are known in the planned development industry. They also testified that a reasonably prudent developer would undertake a "safety analysis" or "hazard analysis" and take steps such as sequencing development or conducting mass grading to eliminate the risk of injury from these roll-away accidents.

If all of these things are true, it would be sufficient to impose a duty of care. *See Fussell*, 364 N.C. at 226, 695 S.E.2d at 440; *United Leasing Corp. v. Miller*, 45 N.C. App. 400, 406–07, 263 S.E.2d 313, 318 (1980). The Copelands will have established that a prudent planned community developer would foresee that the construction creates a risk of roll-away accidents and that sequencing the construction in various, reasonable ways will reduce the risk of injury resulting from those accidents.

Unsurprisingly, Crescent disputes *all* of the Copelands' evidence supporting this theory of duty—everything from the notion that developers can foresee these types of risks to the assertion that the Forest Ridge community is situated on hilly terrain.

Ordinarily, the determination of whether one owes another a duty of care is a question of law. But "when the facts are in dispute or when more than a single inference can be drawn from the evidence, the issue of whether a duty exists is a mixed question of law and fact. The issues of fact must first be resolved by the fact finder, and then whether such facts as found by the fact finder give rise to any legal duty must be resolved by the court." *Mozingo by Thomas v. Pitt Cty. Mem'l Hosp., Inc.*, 101 N.C. App. 578, 588, 400 S.E.2d 747, 753 (1991), *aff'd*, 331 N.C. 182, 415 S.E.2d 341 (1992). Because there are disputed issues of material fact on the question of duty, this matter cannot be resolved at summary judgment.

We note that, although the question of duty involves fact disputes that cannot be resolved as a matter of law, there may be other legal barriers to the relief the Copelands seek. The appellate briefing in this case dealt entirely with the legal question of duty. Issues concerning intervening or superseding causation, and the admissibility of the rather vague discussions by the Copelands' experts of the risk of non-negligent roll-away accidents on hilly construction sites, were not briefed by the parties. Although our review of a summary judgment ruling is *de novo*, we decline to comb through the record and independently address issues not raised by the parties. *Johnson v. Causey*, 207 N.C. App. 748, 701 S.E.2d 404, 2010 WL 4288511, at *9 (2010) (unpublished); N.C. R. App. P. 28(b)(6). We leave for the trial court, on remand, the

determination of whether there are other grounds on which to rule in this case as a matter of law, or whether the case must proceed to trial.

## Conclusion

We reverse the trial court's grant of summary judgment and remand for further proceedings.

REVERSED AND REMANDED.

Judges BRYANT and MURPHY concur.