TALMADGE ANDREW GIBBS v. CAROLINA POWER & LIGHT COMPANY.

(Filed 28 September, 1966.)

**1. Appeal and Error § 41—**

It cannot be determined that the exclusion of evidence was prejudicial when the record fails to show what the testimony would have been.

**2. Same—**

The exclusion of evidence is not prejudicial on review of motion to nonsuit when other witnesses testify fully in regard to the matter.

**3. Same—**

Permitting an attorney to cross-examine plaintiff when an attorney-client relationship had theretofore existed between them cannot be held prejudicial when none of the evidence elicited by the attorney was relevant to the issues, and therefore could not have affected the judgment.

**4. Trial § 21—**

On motion for compulsory nonsuit, plaintiff's evidence supported by allegation is to be taken as true and considered in the light most favorable to him, and defendant's evidence in conflict therewith is to be disregarded.

**5. Negligence § 11—**

A person *sui juris* is under duty to use ordinary care to protect himself from injury, and the degree of such care should be commensurate with the danger to be avoided.

**6. Electricity § 8— Evidence held to show contributory negligence on part of electrical worker in failing to use available safety devices.**

The evidence disclosed that plaintiff was an employee of a subcontractor and that plaintiff was an experienced electrical worker, that in the performance of his work he was in contact with a ground wire less than two feet from a "hot" wire, that employees of the contractor came upon the scene and one of them permitted a loose wire to form a connection between the "hot" wire and the ground wire, resulting in severe injury to plaintiff. The evidence further tended to show that the subcontractor furnished safety equipment, that plaintiff had rubber gloves within his reach, and that the injury would not have occurred had plaintiff worn the rubber gloves. *Held:* The evidence discloses contributory negligence as a matter of law on the part of plaintiff in adopting a dangerous manner of handling a dangerous instrumentality when a safe manner of conduct was known and available to him.

APPEAL by plaintiff from *Martin, S.J.,* March 1966 Session of BUNCOMBE.

Civil action to recover damages for personal injuries alleged to have been caused by the actionable negligence of the defendant's employee.

Plaintiff's evidence tends to show: That on 8 August 1961 he was an employee of Sky-Line Construction Company, was a first class lineman with sixteen years experience, and, on the occasion of the injury, was acting foreman in charge of a 4-man crew; that he and his crew were performing work pursuant to a work order, part of a master contract between defendant as contractor and plaintiff's employer as contractee. The crew was installing a new pole for a new feeder line and running a 26-foot span of wire from a substation structure to the pole. An existing three-phase power line was then connected to the lower crossarms on the new pole. Jumpers were placed on the energized conductors so that the connection on the new pole's crossarms could be done "hot." According to the work order, the work of plaintiff's employer was to be completed after the span wires were run from the substation structure to a cross beam on the new pole. As an "accommodation" to defendant, plaintiff undertook to hook up lightning arrestors and run jump wires to a set of existing switches.

Now coming to plaintiff's injury. According to plaintiff: After dinner on 8 August 1961, he went on the pole and began hooking up the lightning arrestors. When he went on the pole there was nobody there but his crew. The closest hot wire to him was about 12 to 14 feet away. While connecting the lightning arrestors he saw two employees of defendant working below him. When he was injured he was sitting astraddle a lightning arrestor (ground wire) which he knew was a conductor of electricity. His bare hand was on the span wire when he was burned. At the nearest point the unenergized span wire was less than two feet from a hot wire.

Plaintiff further testified that he and his crew brought their own tools and safety appliances, including rubber gloves, rubber blankets, etc. His rubber gloves were in a pouch hanging on a crossarm within his reach. He knew which wires were hot and which were not. Just before he was injured he observed that Mr. Stroupe, an employee of defendant, was doing work on a ladder below him. He testified that rubber is a good insulator and if there had been rubber between him and the current he probably would not have been hurt; he did not need safety appliances *until somebody came out there*. He was severely injured as a result of the burns.

Plaintiff's witness W. T. Downs testified he was a lineman employed by Sky-Line Construction Company on 8 August 1961; that about the time of plaintiff's injury, Dockery and Stroupe, employees of defendant, came to the substation and put up wooden ladders beside plaintiff, who was astraddle the lightning arrestor which was in contact with the ground wire. Stroupe, standing on the ground, handed Dockery, who was on a ladder between the left and middle blade switches, a 10-foot coil of 4/0 copper wire with both ends loose. Dockery was holding the coil of wire in the middle and he sort of bent over to get the wire and "fireworks broke loose." He looked up and saw Gibbs, with one hand on the wire and smoke coming from his left leg. He helped get Gibbs down. Gibbs was seriously injured. He (Downs) had on rubber gloves while working on the pole.

Plaintiff's witness Joe Hensley testified that on the occasion of plaintiff's injury he was a truck driver for Sky-Line Construction Company, and his truck carried safety equipment for Sky-Line employees. One of his duties was to hand up safety equipment to linemen when they asked for it. "In the power construction business you should stay away from any grounds. This is the most dangerous part of the work, that is, when you get near a ground wire. On this occasion Mr. Gibbs was sitting right on a ground wire up there at the substation. . . . He was not seated on a rubber blanket. . . . Mr. Gibbs did not have on his rubber gloves. If there had been

rubber between him and the current, then the current couldn't have gone through him to the ground."

Hensley testified substantially as had other witnesses in respect to other circumstances of plaintiff's injury.

E. B. Clark, who was admitted by the court as an expert witness in electrical construction, testified that he was president and manager of Sky-Line Construction Company on 8 August 1961. He received work order from defendant to install a new feeder line. He went to the substation where work was in progress about 1:30 on 8 August and put plaintiff in charge.

"I have instructed my men as a part of my safety program not to work in or around power construction, when there is another crew from another company working there . . . (A)t no time from a safety standpoint do you want to work two foreign crews together, telephone, power, or what have you . . . Mr. Gibbs was exposed to the day to day dangers of the work, and he knew about rubber gloves and other safety devices. . . . In order to receive an electrical shock and sustain injury it would be necessary to have an electrical voltage or pressure, and secondly a conductor through which electricity would flow, and thirdly a ground which draws the current or permits the current to go through the conductor. . . . Yes, to install the span wire conditions prove that a workman should have had gloves on working with hot wires. A workman should not have been up on top of this creosoted timber in contact with the timber and the ground wire, but should have been working below either on a wooden ladder or wooden platform. One of our standard practices is to keep clear of the ground at all times. At the time, Mr. Gibbs was the foreman on the job. . . .

"Safety equipment was provided by Sky-Line Construction Company for the crew on the job on August 8, 1961. Safety equipment included rubber gloves, rubber hose, hoods, blankets, baker boards, mechanical jumpers, and on occasions, sleeves. The function of rubber gloves is to insulate the man working on power construction from the conductor that he is working on. . . . We are discussing and pointing out safety to our people every day. . . .

"The cardinal rule of safety in electrical construction is to wear rubber gloves first when you are working with wires that are hot; and second when you are working with wires that are dead and not hot but which are near other wires and switches which are hot."

At the conclusion of plaintiff's evidence defendant moved for judgment as of nonsuit. The motion was allowed, and plaintiff appealed.

*Riddle & Briggs for plaintiff-appellant.*

*Sherwood H. Smith, Jr., and Van Winkle, Walton, Buck & Wall, by Herbert L. Hyde for defendant-appellee.*

BRANCH, J. Plaintiff's first exception is to the refusal of the trial court to allow plaintiff to describe the manner in which defendant's employees, Stroupe and Dockery, were working. This exception is without merit since, as no part of the record shows what the excluded evidence would have been, we cannot determine whether its exclusion was prejudicial. *Cooperative Exchange v. Scott,* 260 N.C. 81, 132 S.E. 2d 161. Moreover, it appears that other witnesses testified fully as to the manner in which Stroupe and Dockery were working. On review of judgment of nonsuit, any possible error in excluding this evidence was cured by this testimony. *Petty v. Print Works,* 243 N.C. 292, 90 S.E. 2d 717.

Plaintiff assigns as error the trial court's allowing counsel for Sky-Line to cross-examine plaintiff, on the ground that counsel had previously been in an attorney-client relationship with plaintiff. We have examined the record carefully and find no prejudicial error resulting therefrom. None of the evidence elicited by counsel goes to the issue of defendant's negligence nor to plaintiff's contributory negligence, and it is therefore immaterial to the judgment of nonsuit entered by the court below. Plaintiff admits this assignment is not supported by case authority.

We now come to the primary and crucial question presented for decision. Did the trial court err in allowing defendant's motion for judgment as of nonsuit?

In considering this question we recognize the familiar rule that "On a motion for judgment of compulsory nonsuit, plaintiff's evidence is to be taken as true, and considered in the light most favorable to him, giving him the benefit of every fact and inference of fact pertaining to the issues which may be reasonably deduced from the evidence. Plaintiff's evidence must be considered in the light of his allegations to the extent the evidence is supported by the allegations. Defendant's evidence which tends to impeach or contradict plaintiff's evidence is not to be considered. Discrepancies and contradictions in plaintiff's evidence do not justify a nonsuit, because they are for the jury to resolve." *King v. Bonardi,* 267 N.C. 221, 148 S.E. 2d 32; 4 Strong, N. C. Index, Trial, Sec. 21; Supp. to Vol. 4, *Ibid,* Sec. 21.

It is seriously contended by the defendant that the plaintiff did not offer sufficient evidence to sustain the allegations of his complaint; however, conceding *arguendo,* that there is evidence of negligence on the part of the defendant sufficient to sustain plaintiff's allegations of actionable negligence, the plaintiff's own evidence in-

escapably shows that plaintiff failed to use ordinary care for his own safety and that such want of due care was at least one of the proximate causes of his injury.

"The law imposes upon a person *sui juris* the duty to use ordinary care to protect himself from injury, and the degree of such care should be commensurate with the danger to be avoided." *Rosser v. Smith,* 260 N.C. 647, 133 S.E. 2d 499.

In the case of *Deaton v. Elon College,* 226 N.C. 433, 38 S.E. 2d 561, an experienced electrician was employed by an independent contractor to replace poles in an existing line, involving the transfer of wires from the old to the new poles. The lineman knew that two of the wires were light circuit wires and three were high tension wires. One of the high tension wires was fastened to the side of the house with house brackets in a manner usually employed for low tension wires solely. The lineman had rubber gloves which would have protected him from injury. He caught hold of the high tension wire with his bare hand while standing on wet ground, and was electrocuted. Barnhill, J. (later C.J.), speaking for the Court in affirming the judgment entered in the court below, stated: " 'It has been repeatedly held that where one knowingly places himself in a place of danger which he might easily have avoided, he assumes all risks incident thereto.' (Citing cases). Furthermore, in respect to the work being performed by him ordinary care means the highest degree of care (citing cases)."

We observe, parenthetically, that the case of *Deaton v. Elon College, supra,* can be distinguished from the instant case to the advantage of the defendant, in that the *Deaton* case involved latent defects of which contractee knew, or should have known, and of which the contractor had no knowledge and could not have reasonably discovered. The instant case reveals facts that tend to show that the danger was, or should have been, obvious to the plaintiff.

In the case of *Register v. Power Co.,* 165 N.C. 234, 81 S.E. 326, plaintiff sued the electrical company for the wrongful death of her intestate, alleging negligence in not shutting off its current while intestate was engaged in his employment of working upon the wires of the company. It was there held the intestate assumed the risks of all danger necessarily incident to the employment he was engaged in, it appearing from the testimony of his own witnesses that the injury would not have occurred had he used the rubber gloves furnished him, and that he was an experienced person who should have known the danger in thus acting. The Court sustained judgment of nonsuit entered by the lower court.

In the instant case plaintiff was an experienced lineman, and at the particular time was in charge of a work crew. He was familiar

with approved and recognized safety practices and had the necessary safety equipment not only available but within reach. He stated, "(I)f there had been rubber between me and the current I probably would not have been hurt."

Thus it appears that in the face of obvious and recognized danger he turned his back on a known safe course of conduct and embraced a course of danger in handling a dangerous instrumentality.

The evidence elicited from his own witnesses requires the inevitable conclusion that plaintiff's conduct constituted a failure to use ordinary care for his own safety, which, if not the sole proximate cause, was at least one of the direct proximate causes of his own injury.

The judgment of the court below is

Affirmed.