JAMES L. MARTISHIUS AND CINDY K. MARTISHIUS, PLAINTIFFS V.
CAROLCO STUDIOS, INC., DEFENDANT

No. COA00-199

(Filed 20 February 2001)

**1. Evidence— expert testimony—negligence—reasonable care for safety—no firsthand knowledge—basis of opinion given**

The trial court did not err in a negligence case by admitting the testimony of two experts stating that plaintiff exercised reasonable care for his safety when he was injured by power lines while helping to construct a movie set on defendant landowner's property even though the experts did not testify from firsthand personal knowledge, because: (1) one expert based his opinion on depositions, affidavits, and measurements taken of the scene of plaintiff's accident; (2) the other expert's testimony was based on photographs and previous testimony at trial; and (3) any question as to the sufficiency of the factual basis affected the weight of the experts' testimony and not its admissibility.

**2. Premises Liability— injury by power lines—negligence by landowner—motion for directed verdict and judgment notwithstanding verdict properly denied**

The trial court did not err by denying defendant's motions for a directed verdict and judgment notwithstanding the verdict on the issue of defendant landowners's negligence for plaintiff's injuries caused by power lines on defendant landowner's property while plaintiff was helping to construct a movie set even though plaintiff was aware of the power lines, because: (1) plaintiff's awareness did not abrogate defendant's duty to inform the lawful visitor of an unreasonable risk of harm; (2) various alternatives were available to defendant to safeguard against the hazards posed by the presence of the power lines, but defendant took no precautions; and (3) defendant's representative who inspected the activities on the property every day admitted to plaintiff's supervisor that he had warned defendant for years to do something about the power lines.

MARTISHIUS v. CAROLCO STUDIOS, INC.

[142 N.C. App. 216 (2001)]

### 3. Premises Liability— injury by power lines—contributory negligence—motion for directed verdict and judgment notwithstanding verdict properly denied

The trial court did not err by denying defendant's motions for a directed verdict and judgment notwithstanding the verdict on the issue of plaintiff's contributory negligence as a matter of law when plaintiff was injured by power lines while helping to construct a movie set on defendant landowner's property, because: (1) plaintiff's evidence shows he operated the pertinent equipment on several occasions and was a proficient operator of such equipment; (2) plaintiff was operating new equipment with electronic controls that caused the machine to be jerky and erratic; (3) plaintiff's experts as well as plaintiff's coworkers testified the sun was directly in plaintiff's eyes at the time of the accident making it difficult if not impossible to see the power lines; and (4) plaintiff's witnesses testified that no other safer methods were available to plaintiff.

### 4. Premises Liability— injury by power lines—motion for new trial properly denied

The trial court did not abuse its discretion in a negligence case by denying defendant's motion for a new trial in an action where plaintiff was injured by power lines on defendant landowner's property while plaintiff was helping to construct a movie set when the Court of Appeals has already concluded that plaintiff presented substantial evidence that defendant was negligent in failing to prevent plaintiff's injuries and that plaintiff was not contributorily negligent.

Judge TYSON dissenting.

Appeal by defendant from judgment filed 23 July 1999 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 9 January 2001.

*Kirby & Holt, L.L.P., by David F. Kirby and Isaac L. Thorp, and Goldberg & Anderson, by Frederick D. Anderson, for plaintiff-appellees.*

*Law Offices of William F. Maready, by William F. Maready, for defendant-appellant.*

GREENE, Judge.

Carolco Studios, Inc. (Defendant) appeals a 23 July 1999 judgment entered consistent with a jury verdict finding Defendant negligent in causing injuries to James L. Martishius (Plaintiff) and awarding Plaintiff $2,500,000.00.[1] Defendant also appeals the trial court's denial of Defendant's motion for judgment notwithstanding the verdict, the trial court's denial of Defendant's motion for a new trial, and the trial court's order assessing costs against Defendant.[2]

Crowvision, Inc. (Crowvision), a production company formed to produce the movie "The Crow," entered into a license agreement with Defendant on 29 December 1992 for the use of a portion of Defendant's land, stages, facilities, equipment, and personnel in connection with production of "The Crow." Defendant warranted to Crowvision that the premises and facilities were "satisfactory and in a safe condition."

Prior to Crowvision beginning production of "The Crow," Gerald Waller (Waller), a licensed electrician and Defendant's on-site facility manager, showed Jeffrey Schlatter (Schlatter), Crowvision's construction coordinator, the back lot of Defendant's facilities and inspected the back lot's power lines. Waller informed Schlatter that Carolina Power & Light Company (CP&L) had a thirty foot right-of-way and Crowvision would have to keep its set at least ten feet from the power lines to avoid encroaching on CP&L's easement. CP&L's three power lines ran parallel five feet apart. Both of the outer lines were energized and were installed 27.8 feet above the ground. The energized lines were buffered on both sides by ten feet of CP&L's easement.

In January 1993, Crowvision installed 10 or 11 telephone poles on the back lot to facilitate the construction of a church and cemetery set facade. On 1 February 1993, Paul Saunders, Plaintiff's supervisor, instructed Plaintiff to assist the construction foreman on the church/cemetery set. Plaintiff used a JLG, "a piece of equipment that

---

1. We note Cindy K. Martishius also filed suit against Defendant based on the loss of consortium of her husband, Plaintiff. The jury, however, found Defendant's negligence did not cause the loss of consortium of Plaintiff and Cindy K. Martishius did not appeal the jury's verdict.

2. Defendant has presented no argument in its brief to this court concerning the trial court's order assessing costs against Defendant. Therefore, we do not address this issue. *See* N.C.R. App. P. 28(a).

has tires and can move from spot to spot, rotates around with an extending boom [and a] work platform, so that it will get to high places," to attempt to move the church door. As Plaintiff positioned the JLG to pick up the church door, the basket of the JLG contacted an overhead power line. Plaintiff has no memory of how the accident happened, and Plaintiff sustained severe burns about his body as a consequence of the contact.

At trial, Plaintiff presented evidence Waller inspected the activities on the back lot every day and was physically present when the holes were dug for the telephone poles upon which the set facades were hung. In fact, Waller was aware the poles were within a foot or two of the power lines. Schlatter testified he obtained Waller's permission before making set alterations, including changes to or additions of set facades. Schlatter also testified that the route taken by Plaintiff to move the church door was the best route as other routes were blocked or inaccessible. Shortly after the accident, Waller told Schlatter that he had warned Defendant "for years to do something about these lines."

John Christopher Crowder, a carpenter with Crowvision, testified the job Plaintiff was performing on the day of the accident was a "one-man operation" and that most carpenters would not use two people to perform the job Plaintiff was performing at the time of the accident.

Witnesses testified Plaintiff was a competent operator of the JLG and was one of the best at running the JLG. On the day of the accident, Plaintiff was operating a new JLG which had different controls than other JLGs on the set. A representative of Hertz, the company Crowvision leased the JLG from, testified the new JLG had electronic controls and was jerky and erratic. The new JLG put individuals at a greater risk of striking objects in close proximity to the JLG.

Ralph Woollaston (Woollaston), Crowvision's construction foreman, testified it is very difficult to see power lines while operating a JLG. Woollaston stated the power lines become cluttered in trees and the power lines look invisible and "[i]f the sun is in your eyes, you are not going to see them at all." The day after Plaintiff's injury, Woollaston and Schlatter went to the scene of Plaintiff's injury. They looked at the power lines from several vantage points, conditions being similar to the time of Plaintiff's injury, and "[t]here were several places that . . . you couldn't see them." At times, the power lines appeared as "pencil lines in the air." Woollaston testified use of the

JLG was the best method to use in the work Plaintiff was performing at the time of the accident and that a forklift was not a preferable method because it would have flipped over. On cross-examination, Woollaston stated the door Plaintiff was moving was a very heavy door and otherwise would have taken five men to move the door.

Dr. Harvey Snyder (Dr. Snyder) was tendered as an expert in the field of human factors and visual perception. Over Defendant's objection, the trial court accepted Dr. Snyder as an expert in human factors and visual perception. The trial court, however, directed Dr. Snyder to avoid making legal conclusions. Based on depositions, affidavits, and measurements taken by Dr. Snyder, Dr. Snyder opined that Plaintiff approached the area where the accident occurred and:

> [h]is objective was to reach in through the gap between the vertical structure . . . and the poles to the right of it to pick up a flat which looked like a window or doorway lying on the ground, probably some 70 or 80 feet away . . . . [Plaintiff] operated the JLG from the bucket, raised it up over the structure . . . to his right, or beyond the bucket as we see it sitting right now, boomed out to attempt to pick up the flat lying on the ground and affixed it to the bucket to bring it back. [Plaintiff] could not reach it. The boom length was not adequate to get there. [Plaintiff], therefore, started booming back in to return to the position . . . [,] [b]oomed in, elevated and rotated to get back toward[] that position, and in the process, contacted or came very close to the energized line and made contact with the neutral line, the lower line, the lower line being hit by the bucket.

In Dr. Snyder's opinion, the power lines "were located dangerously close to the structures which [Plaintiff was] working on. . . . There is insufficient space between the structures and the lines for a person to use elevating equipment safely." Dr. Snyder stated Plaintiff's operation of the JLG was made extremely difficult because Plaintiff was looking directly into the sun as he operated the JLG and, thus, was prevented from seeing the power lines.

In addition, Plaintiff's "perception of the distance to the lines and even the ability to see the lines would have been greatly compromised, and it is reasonably likely that someone in that position looking at those lines would not be able to see them because of the sun['s] glare." Dr. Snyder testified the power lines did not "provide any freedom of movement for an operator, . . . any forgiveness, whatsoever,

to an operator who moves slightly in the wrong dimension in coming close to the lines." Dr. Snyder stated there were various alternatives available to Defendant to safeguard against the particular hazard including: de-energizing the power lines; moving or burying the power lines; or not permitting a set to be built in close proximity to the power lines. Dr. Snyder testified that "[w]arnings are not a fail-safe device for eliminating hazards, and if the hazard could have been eliminated, it should have been eliminated."

David MacCollum (MacCollum) is a licensed industrial engineer and a licensed safety engineer, who identifies hazards and defines available safeguards to control the hazards. MacCollum has been a certified safety professional for approximately thirty years. Plaintiff tendered MacCollum as an expert in the field of safety engineering. The trial court accepted Plaintiff's tender over Defendant's noted objection.

Based on photographs and previous testimony at trial, MacCollum testified:

> [Plaintiff] had to come within close proximity and work next to those power lines and judge the best that he could that he had visual clearance.
>
> ... [Plaintiff was] looking toward[] the sun, which makes [the power lines] hard to see. It's hard to, in controlled studies, to be able to judge your clearance, particularly when you have multiple tasks. So in the process, my assessment, in summary, is that [Plaintiff] thought he had clearance, and he was doing his job as he was told to do, and he was doing it consistent with the requirements of the equipment and the labels in the manual that gave directions on how to perform your work around power lines safely.

MacCollum also formed an opinion concerning the conduct of Defendant. MacCollum opined that Defendant "had a hazardous workplace because the power lines were present[,] . . . the power lines could have been easily removed, and . . . [Plaintiff], the operator, was following the basic instructions from the JLG." MacCollum testified that the custom and practice in the construction industry "is to separate or remove the power lines from the workplace before the lift equipment is introduced into the work environment, so that it is now physically impossible to strike the power lines with lift equipment." Defendant could have removed the power lines from the work

site by: burying the power lines; barricading the area off to restrict entry into the area; or insulating on the power lines.

Dr. James Samuel McKnight (Dr. McKnight) was accepted, without objection, as an expert in the field of electrical engineering and electrical safety in construction sites. Dr. McKnight testified Defendant's back lot and the overhead power lines involved in this accident did not comply with industry customs, standards, and practices. In Dr. McKnight's opinion, the constant activity around the overhead power lines created an "unnecessary hazard" and the power lines could have been designed to reduce the hazard. Based on photographs taken of the accident scene after Plaintiff's injury and burn marks to the JLG, Dr. McKnight concluded Plaintiff did not back into the power lines, but instead, the side of the JLG contacted the power lines.

At the close of Plaintiff's evidence and the close of all the evidence, Defendant made motions for a directed verdict. The trial court denied Defendant's motions. After the jury returned its verdict, Defendant made motions for judgment notwithstanding the verdict and a new trial.

---

The issues are whether: (I) the opinions of Plaintiff's expert witnesses were based on an insufficient factual basis; (II) Defendant took adequate steps to protect lawful visitors from unreasonable risks; (III) Plaintiff was contributorily negligent as a matter of law; and (IV) the jury's verdict was against the greater weight of the evidence.

I

[1] Defendant argues the trial court erred in admitting the testimony of Dr. Snyder and MacCollum because there were not "sufficient facts upon which to base these opinions." We disagree.

"Once the trial court in its discretion determines that the expert testimony will not mislead the trier of fact, any question as to the sufficiency of the factual basis of the opinion affects the credibility of the testimony but not its competence as evidence." *Powell v. Parker*, 62 N.C. App. 465, 468, 303 S.E.2d 225, 227, *disc. review denied*, 309 N.C. 322, 307 S.E.2d 166 (1983). "It is well settled that an expert witness need not testify from firsthand personal knowledge, so long as the basis for the expert's opinion is available in the record or on demand." *State v. Purdie*, 93 N.C. App. 269, 276, 377 S.E.2d 789, 793 (1989).

**MARTISHIUS v. CAROLCO STUDIOS, INC.**

[142 N.C. App. 216 (2001)]

In this case, Dr. Snyder based his opinion on depositions, affidavits, and measurements taken of the scene of Plaintiff's accident. MacCollum's testimony was based on photographs and previous testimony at trial. Furthermore, Plaintiff's witnesses testified that in reconstructing the accident scene, under conditions similar to those faced by Plaintiff, the power lines were very difficult, if not impossible, to see due to glare from the sun. The record clearly delineates the factual basis relied on by Dr. Snyder and MacCollum, and any question as to the sufficiency of the factual basis affected the weight of the experts' testimony and not its admissibility. Accordingly, the trial court did not err in allowing Plaintiff's expert witnesses to state their opinion that Plaintiff exercised reasonable care for his safety.

II

[2] Defendant argues the trial court committed reversible error in denying its motions for a directed verdict and judgment notwithstanding the verdict on the issue of Defendant's negligence. We disagree.

In order to prevail on a claim of negligence, the plaintiff must establish the defendant owed him a duty of reasonable care, that the defendant was negligent in this duty, and that such negligence was the proximate cause of the plaintiff's injuries. *Beaver v. Hancock*, 72 N.C. App. 306, 311, 324 S.E.2d 294, 298 (1985). A landowner owes a duty "to exercise reasonable care to provide for the safety of all lawful visitors on [its] property," and, thus, is required to "take reasonable precautions to ascertain the condition of the property and to either make it reasonably safe or give warnings as may be reasonably necessary to inform the [lawful visitor] of any foreseeable danger." *Lorinovich v. K Mart Corp.*, 134 N.C. App. 158, 161-62, 516 S.E.2d 643, 646, *cert. denied*, 351 N.C. 107, —— S.E.2d —— (1999). In some situations, however, a warning does not satisfy the landowners's duty. If a reasonable person would anticipate an unreasonable risk of harm to a visitor on his property, notwithstanding the lawful visitor's knowledge of the danger or the obvious nature of the danger, the landowner has a duty to take precautions to protect the lawful visitor. *See Southern Railway Co. v. ADM Milling Co.*, 58 N.C. App. 667, 673, 294 S.E.2d 750, 755, *disc. review denied*, 307 N.C. 270, 299 S.E.2d 215 (1982).

In this case, viewing the evidence in the light most favorable to Plaintiff, *see Smith v. Price*, 315 N.C. 523, 527, 340 S.E.2d 408, 411

(1986) (the standard of review of a trial court's ruling on a motion for judgment notwithstanding the verdict is the same as that upon a motion for a directed verdict and in considering either motion, the evidence must be viewed in the light most favorable to the non-moving party), Plaintiff produced substantial evidence to support every element of his claim for relief, *see Cobb v. Reitter*, 105 N.C. App. 218, 220, 412 S.E.2d 110, 111 (1992) (a defendant is entitled to a directed verdict or judgment notwithstanding the verdict only if the plaintiff is unable to produce substantial evidence that the defendant's negligence was the proximate cause of plaintiff's injuries). Although Plaintiff was aware of the power lines, Plaintiff's awareness did not abrogate Defendant's duty. Defendant was aware of Crowvision's construction of a set near the power lines and Waller, Defendant's representative, inspected Crowvision's activities every day and was on the scene when the holes were dug to insert telephone poles within a foot or two of the power lines. Although the evidence shows Defendant warned Plaintiff's employer about the presence of the power lines, a reasonable person could anticipate an unreasonable risk of serious harm to employees of Crowvision (who were to be working underneath and adjoining the lines with equipment that could reach to the lines), caused by the power lines passing through the property. Thus, Defendant had a duty to take feasible precautions to guard against this serious harm. Plaintiff's expert witnesses testified various alternatives were available to Defendant to safeguard against the hazards posed by the presence of the power lines. Defendant, however, took no precautions to make its premises safe, despite its awareness of Crowvision's close proximity to the power lines and the unreasonable risk of harm to Crowvision's employees. In fact, Waller admitted to Plaintiff's supervisor that he had warned Defendant "for years to do something about these lines." Despite Waller's warnings to Defendant and the availability of alternative safeguards, Defendant took no precautions to remedy the dangerous conditions on its premises. Accordingly, this evidence is substantial evidence Defendant failed to take precautions against an unreasonable risk of serious harm. *See Cobb*, 105 N.C. App. at 220, 412 S.E.2d at 111 (substantial evidence is evidence a reasonable mind might accept to support a conclusion). The trial court, therefore, did not err in denying Defendant's motions for a directed verdict and judgment notwithstanding the verdict.

MARTISHIUS v. CAROLCO STUDIOS, INC.

[142 N.C. App. 216 (2001)]

## III

**[3]** Defendant next argues Plaintiff was contributorily negligent in causing his injuries, and, thus, Plaintiff's claim of negligence was barred. We disagree.

A plaintiff who is aware of a known danger, but fails to avoid it, is contributorily negligent. *Stallings v. Food Lion, Inc.,* 141 N.C. App. 135, 539 S.E.2d 331, 333 (2000). "The test for contributory negligence is whether a person using ordinary care for his or her safety under similar circumstances would have recognized the danger." *Id.* Because the test for contributory negligence requires application of the reasonable person standard, a directed verdict is rarely proper in determining contributory negligence and should be allowed only when the plaintiff's evidence, viewed in the light most favorable to him, clearly establishes the defense of contributory negligence so that no other reasonable conclusion could be drawn. *Id.*

In this case, Plaintiff's evidence shows he operated JLGs on several occasions and was a proficient operator of such. At the time of Plaintiff's accident, he was operating a new JLG, with electronic controls that caused the machine to be jerky and erratic. Furthermore, Plaintiff's experts, as well as Plaintiff's co-workers, testified the sun was directly in Plaintiff's eyes at the time of the accident making it difficult, if not impossible, to see the power lines. Moreover, Plaintiff's witnesses testified no other, safer methods were available to Plaintiff to move the church door. Viewing this evidence in the light most favorable to Plaintiff, we cannot say as a matter of law that Plaintiff was contributorily negligent. Accordingly, the trial court did not err in denying Defendant's motion for a directed verdict or judgment notwithstanding the verdict due to Plaintiff's contributory negligence.

## IV

**[4]** Defendant finally argues the trial court abused its discretion in denying Defendant's motion for a new trial. We disagree. The trial court's ruling on a motion for a new trial is within the trial court's sound discretion and will not be reversed on appeal, absent a showing the trial court's ruling amounted to a substantial miscarriage of justice. *Allen v. Beddingfield,* 118 N.C. App. 100, 101-02, 454 S.E.2d 287, 289, *disc. review denied,* 340 N.C. 109, 456 S.E.2d 310 (1995). Because we have stated in parts II and III herein that Plaintiff presented substantial evidence Defendant was negligent in failing to .

prevent Plaintiff's injuries and that Plaintiff was not contributorily negligent, we cannot say, based on this record, the trial court's decision not to grant Defendant a new trial was an abuse of discretion or resulted in a miscarriage of justice.

No error.[3]

Judge HORTON concurred before 8 February 2001.

Judge TYSON dissents.

TYSON, Judge, dissenting.

I would hold that the trial court erred in denying Carolco's motions for directed verdict and/or judgment notwithstanding the verdict and will address the following issues: (1) the duty Carolco owed to plaintiff; (2) whether Carolco breached its duty owed; (3) the obvious nature of the dangerous condition, and plaintiff's knowledge thereof; and (4) plaintiff's contributory negligence.

### Facts

In addition to the majority's factual background, I add the following. Plaintiff worked for Crowvision, licensee of Carolco. Crowvision's representatives inspected Carolco's facilities on several occasions prior to executing the license agreement. Carolco representatives toured the facilities with Crowvision, explaining to Crowvision the layout of the studio, and the area in which Crowvision would be working. Gerald Waller, a licensed electrician and Carolco's Facility Manager, showed Crowvision employees, including Crowvision's Construction Coordinator Jeff Schlatter, the backlot of the studio.

Waller informed Schlatter and other Crowvision representatives about the presence of an easement on the backlot owned by Carolina Power & Light Company ("CP&L"). CP&L's easement was thirty feet wide and contained three overhead power lines, installed in 1984. The lines ran five feet apart and parallel. The easement extended fifteen feet from the center line, and ten feet beyond the outer power lines. The center line was a neutral line hanging twenty feet from the

---

3. We do not address Defendant's remaining assignments of error as Defendant has not presented any argument in its brief relating to these assignments of error. *See* N.C.R. App. P. 28(a) (questions raised by assignments of error but not "discussed in a party's brief, are deemed abandoned").

ground. Both outer lines were energized and were installed 27.8 feet above ground. The energized lines were buffered on both sides by ten feet of CP&L's easement.

Schlatter testified that Waller made "very clear" to Crowvision the presence of the easement, and that Waller stressed that the ten-foot easement boundary beyond the energized lines must not be invaded. Crowvision's Production Designer, Alex McDowell, expressed a desire to construct sets within CP&L's easement for the film's "artistic needs" and the need to obtain long, in-depth shots of the set. Schlatter testified that Waller again stressed that CP&L's easement and the boundary beyond the energized lines must not be violated.

Crowvision executed the license agreement with Carolco following repeated inspection of the premises, with notice of CP&L's easement and power lines thereon, and with explicit instruction from Carolco's Facility Manager not to violate the easement. Crowvision acknowledged in the license agreement that it "had full and fair opportunity to inspect the premises and facilities and that the licensed premises and facilities hereunder are satisfactory and in a safe condition." Crowvision further warranted under the agreement that it agreed to comply, "and will cause its agents, employees and invitees to comply, with all reasonable rules, regulations and procedures established by Studio for studio-wide operations and made known to Licensee."

Plaintiff testified that he first worked at Carolco's studio in October 1992 during the filming of the movie "Hudsucker Proxy". Plaintiff began work on the set of "The Crow" during late November 1992. Plaintiff was working on the backlot on 1 February 1993 in his capacity as a carpenter, employed by Crowvision. On that day, Crowvision constructed a twelve-foot high back wall of a church facade. The top of this new wall was 15.8 feet below the energized lines. Crowvision built the wall four feet into CP&L's easement, and only six horizontal feet from the energized power lines. Schlatter testified that the wall was built so far into the backlot because McDowell, Crowvision's Production Designer, wanted additional depth for a long-shot of the church and cemetery scene.

Crowvision's Construction Foreman, Ralph Woollaston, directed plaintiff to pick up a large church door and place it at the front of the church facade that Crowvision had constructed on CP&L's easement. Plaintiff, using an ariel lift bucket (a "JLG"), approached an opening

in the back of the church facade and positioned the JLG so that he could extend the bucket into the front churchyard and place the door. Chris Crowder, another Crowvision carpenter, was working nearby and saw plaintiff raise the JLG bucket in an attempt to reach and pick up the church door. Crowder briefly turned his back, and then "heard the spark and the explosion." Crowder turned to see plaintiff slumped over the controls of his JLG. Plaintiff's bucket had contacted the power lines on CP&L's easement. Plaintiff sustained serious and permanent injuries.

Plaintiffs filed suit against Carolco, CP&L, Crowvision, Edward R. Pressman Film Corporation, and Hertz Equipment Rental Corporation on 20 April 1994. Plaintiffs' claims against Carolco's co-defendants were either settled or dismissed, and the matter proceeded to trial solely against Carolco. Carolco moved for a directed verdict both at the close of plaintiffs' evidence and at the close of all evidence. Carolco argued that the evidence failed to establish its negligent breach of a duty, and that plaintiff was contributorily negligent.

I would hold that plaintiff's evidence, viewed in the light most favorable to plaintiff, fails to show plaintiff has a right to recover. Carolco was entitled to a directed verdict or judgment notwithstanding the verdict.

———————————

"A motion for directed verdict tests the sufficiency of the evidence to take the case to the jury." *Abels v. Renfro Corp.*, 335 N.C. 209, 214, 436 S.E.2d 822, 825 (1993) (citations omitted). In reviewing the grant of such motion, the evidence must be considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference. *Id.* at 215, 436 S.E.2d 822. A defendant is entitled to a directed verdict or judgment notwithstanding the verdict where the plaintiff cannot forecast evidence sufficient to establish an essential element of the claim for relief. *Williamson v. Liptzin*, 141 N.C. App. 1, —— S.E.2d —— (COA99-813) (19 December 2000).

## Carolco's Duty

Plaintiff was a lawful visitor on Carolco's property as an employee of the licensee, Crowvision. Carolco owed a duty of reasonable care to provide for plaintiff's safety. *Nelson v. Freeland*, 349 N.C. 615, 631-32, 507 S.E.2d 882, 892 (1998), *reh'g denied*, 350 N.C. 108, 533 S.E.2d 467 (1999). This duty has been defined as a duty of

### MARTISHIUS v. CAROLCO STUDIOS, INC.

[142 N.C. App. 216 (2001)]

ordinary care to maintain the premises in a safe condition and to warn of hidden dangers that had been or could have been discovered by reasonable inspection. *Husketh v. Convenient Systems*, 295 N.C. 459, 462, 245 S.E.2d 507, 509 (1978). Carolco is not an insurer of its premises, nor must it "undergo unwarranted burdens in maintaining [its] premises." *Nelson*, 349 N.C. at 632, 507 S.E.2d at 892.

North Carolina law does not support a theory that the mere presence of power lines within the boundaries of the CP&L easement on Carolco's property created an unreasonably dangerous condition, resulting in liability to Carolco. Our Supreme Court has consistently held that the mere maintenance of overhead power lines on one's property is not wrongful or negligence per se. *Floyd v. Nash*, 268 N.C. 547, 151 S.E.2d 1 (1966); *Philyaw v. City of Kinston*, 246 N.C. 534, 98 S.E.2d 791 (1957); *Mintz v. Town of Murphy*, 235 N.C. 304, 69 S.E.2d 849 (1952).

The lines at issue were well within CP&L's thirty-foot easement. A ten-foot buffer zone surrounded the lines on both sides. Maintaining power lines within a few feet of buildings or construction is also not negligence *per se. See Philyaw*, 246 N.C. at 535, 98 S.E.2d at 792 (defendant not negligent despite maintaining energized power lines within four feet of building on which plaintiff performed construction); *Brown v. Duke Power Co.*, 45 N.C. App. 384, 263 S.E.2d 366, *disc. review denied*, 300 N.C. 194, 260 S.E.2d 615 (1980) (defendant not negligent for maintaining 7200-volt power lines approximately 12 feet from decedent's house). Plaintiff did not present evidence that the lines were sagging, had eroded, or were in any state of disrepair. Even so, the burden of maintenance of such lines lies with CP&L, not Carolco. *See Green v. Duke Power Co.*, 305 N.C. 603, 611, 290 S.E.2d 593, 598 (1982) (owner of easement is party charged with duty to keep easement and improvements thereon in repair).

The mere presence of the lines within the boundaries of CP&L's easement on Carolco's backlot does not alone forecast evidence sufficient to establish defendant's breach of any duty of reasonable care. "The mere maintenance of high tension transmission line is not wrongful, and in order to hold the owner negligent, where an injury occurs, he must be shown to have omitted some precaution which he should have taken." *Philyaw*, 246 N.C. at 537, 98 S.E.2d at 794; *Mintz*, 235 N.C. at 314, 69 S.E.2d at 857-58.

The evidence presented at trial established that Carolco satisfied any duty it had, when it made known to Crowvision, plaintiff's

employer: (1) the layout of the backlot, (2) the location and specific dimensions of CP&L's easement, and (3) the presence of the power lines. The evidence is undisputed that Carolco warned Crowvision repeatedly to maintain the ten-foot buffer surrounding both outer power lines on the easement, and not to encroach on CP&L's easement.

Carolco took several Crowvision employees on numerous "walk-arounds" throughout the Carolco property to examine the facilities prior to signing the license agreement. Waller testified that he was present on one such walk-around with Ken Swaim, Carolco's Studio Manager, where Schlatter and Crowvision's Production Design and Production Management Teams examined the facility. The purpose of the walk-around was to make Crowvision aware of the work environment and conditions on Carolco's backlot.

Waller also testified that during this meeting with Crowvision representatives, the power lines in CP&L's easement were "discussed at length," and Crowvision was specifically told that right-of-way distances around the power lines must not be invaded. When McDowell, Crowvision's Production Designer, expressed a desire to build as far back on the lot as possible, Carolco "made very clear" that the right-of-way surrounding the power lines must not be encroached upon. This evidence is undisputed.

Schlatter confirmed that Carolco discussed the presence of the power lines and the easement during walk-arounds with Crowvision employees, and that Waller had warned McDowell about the easement. Schlatter testified that Waller specifically stated that there was "a thirty-foot right-of-way" and that Crowvision was limited to build no closer than fifteen feet of the center line, or ten feet from the outer lines. The evidence is unchallenged that, (1) Carolco showed Crowvision the property, (2) informed it about the specifics of the CP&L easement, and (3) warned Crowvision not to encroach on the buffer surrounding the lines.

Crowvision signed the license agreement with Carolco after the various walk-arounds and with notice of the power lines, the dimensions of the easement, and being warned not to encroach on the buffer. Crowvision acknowledged in the license agreement that the facilities were in safe condition, and that Crowvision and its agents and employees would comply with all studio regulations made known to them.

MARTISHIUS v. CAROLCO STUDIOS, INC.

[142 N.C. App. 216 (2001)]

### Proximate Cause

In order to establish a claim of negligence sufficient to survive a motion for directed verdict or judgment notwithstanding the verdict, a plaintiff must introduce evidence tending to establish that, "(1) defendant failed to exercise proper care in the performance of a duty owed to plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances as they existed." *Sheppard v. Zep Mfg. Co.*, 114 N.C. App. 25, 30, 441 S.E.2d 161, 164 (1994) (citing *Jordan v. Jones*, 314 N.C. 106, 331 S.E.2d 662 (1985)). "The element of foreseeability is a requisite of proximate cause." *Williamson, supra* (citing *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984)).

In *Bogle v. Duke Power Co.*, 27 N.C. App. 318, 219 S.E.2d 308 (1975), *disc. review denied*, 289 N.C. 296, 222 S.E.2d 695 (1976), the plaintiff alleged that the electrocution death of her intestate resulted from the defendant's negligence in allowing its power line to remain near a school building where the defendant knew or should have known it posed a danger to maintenance personnel required to work around the building. Rejecting the plaintiff's argument, this Court determined that defendant complied with its duty to exercise reasonable care: "[i]t is unreasonable to call on the defendant to foresee that plaintiff's intestate would ignore the warning of his supervisor and cause a metal ladder to fall against the line. . . ." *Id.* at 322, 219 S.E.2d at 311; *see also, Sweat v. Brunswick Electric Membership Corp.*, 133 N.C. App. 63, 67, 514 S.E.2d 526, 529 (1999) ("defendant was not required to foresee that plaintiffs, for unexplained reasons, would permit the ladder to come in contact with the power lines. . . .").

The facts of the present case are similar to that of *Philyaw, supra*. In that case, the plaintiff's intestate was killed when he touched power lines that were in close proximity to a building he was helping to construct. *Philyaw*, 246 N.C. at 535, 98 S.E.2d at 792. The decedent was standing on a wall of the building when he arose and touched the power lines that were hanging approximately four to five feet above the building. *Id.* The Court noted that the wires were uninsulated, and that the defendant had not posted any warning signs on or near the premises. *Id.* at 535-36, 98 S.E.2d at 792. The Court further observed that the plaintiff's employer failed to request that the defendant relocate or de-energize the lines while construction was taking place. *Id.*

MARTISHIUS v. CAROLCO STUDIOS, INC.

[142 N.C. App. 216 (2001)]

The Supreme Court affirmed the grant of the defendant's motion for judgment as of nonsuit. *Id.* at 538, 98 S.E.2d at 794. The Court stated that, regardless of any negligence of the defendant in maintaining the uninsulated power lines, "it is apparent from the evidence that the injury to and death of plaintiff's intestate was independently and proximately produced by the wrongful act, neglect, or default of an outside agency or responsible third person." *Id.* at 537, 98 S.E.2d at 793. The Court concluded that the decedent's injuries occurred because the decedent's employer chose to construct the building too close to the energized wires, and the defendant "was not charged with the duty of foreseeing that such would be done." *Id.* at 537-38, 98 S.E.2d at 794.

In *Mintz, supra,* our Supreme Court held the evidence insufficient to submit to the jury on the plaintiff's claim that the defendant breached a duty in maintaining its power lines:

And applying the principles of law here stated to the evidence offered by plaintiff, such evidence fails to make out a case of actionable negligence. If it should be conceded that the evidence tends to show that defendant failed to maintain its transmission line in accordance with its legal duty, the evidence fails to show that such failure was the proximate cause of the injury to plaintiff. On the other hand, it clearly appears from the evidence that the injury of which plaintiff complains was 'independently and proximately produced by the wrongful act, neglect, or default of an outside agency or responsible third person.'

*Mintz,* 235 N.C. at 315, 69 S.E.2d at 858; *see also, Brown* at 390, 263 S.E.2d at 370. In *Brown,* the Court held that the defendant was not required to foresee that the decedent, who was aware of the presence of power lines crossing his property pursuant to a valid easement, and who appreciated the danger posed, would hold a metal antenna in a manner that it would contact the power lines. *Id.*

In the present case, the dangerous condition which proximately caused plaintiff's injuries was created when Crowvision directed plaintiff to maneuver the church door around the twelve-foot wall, that encroached four feet into the CP&L easement, and only six horizontal feet from the energized power lines. This direction to plaintiff was in flagrant disregard for both Carolco's express warnings and regulations of the license agreement. The danger of working in such close proximity to the energized lines was obvious and known.

MARTISHIUS v. CAROLCO STUDIOS, INC.

[142 N.C. App. 216 (2001)]

Schlatter testified that he understood that proper protocol at Carolco required that Waller be consulted about any electrical issue that arose in the course of production. Waller had previously assisted Schlatter with relocation of an electrical distribution box that interfered with a particular camera shot. However, no one from Crowvision ever consulted with Waller or requested that anyone at Carolco arrange to have the power lines relocated or de-energized on the day of the accident. Waller testified that no one from Crowvision submitted to Carolco a construction site plan indicating Crowvision would construct the church facade within CP&L's easement. A site plan was submitted by Crowvision to Carolco required by the license agreement. The site plan Crowvision furnished to Carolco did not show any construction within CP&L's easement.

Applying the principles set forth by our Supreme Court, I would hold that plaintiff's injuries were not proximately caused by any breach of legal duty owed plaintiff by Carolco. Crowvision violated the ten-foot buffer zone and constructed the church set facade only six feet from the overhead wires with full knowledge and warning of the existence of the energized wires. Crowvision then directed plaintiff to assist in the construction of the church facade. Plaintiff did so, using a JLG lift within the CP&L easement. Schlatter admitted that Crowvision "had no safety programs at all" for its employees working around power lines and with JLGs.

In accordance with *Philyaw* and *Mintz*, Carolco should not be held to the duty to foresee that Crowvision and plaintiff would, for unknown reasons, ignore explicit instructions and its written agreement to maintain the easement buffer zone surrounding the wires.

## Obvious Nature of the Danger

Plaintiff argues that the evidence shows Carolco should have known of the close proximity to the power lines in which plaintiff was attempting to place the church door. However, evidence shows that Crowvision did not submit to Carolco any construction site plan showing that the twelve-foot church facade would be constructed within the easement. The wall was constructed at the direction of McDowell, Crowvision's Production Designer, who desired a "long shot looking through the gates of the church back towards the church." Contrary to the majority's statement that "Waller was aware the poles were within a foot or two of the power lines," Waller testified as follows:

I was never aware of anything that actually encroached into the right-of-way, the recognized right-of-way, but we recognized that the right-of-way would be ten feet away from the power lines. I was never asked or presented with anything that would have informed the Studio of an encroachment into the right-of-way.

In any event, our Supreme Court has consistently held that a landowner is not obligated to protect a lawful visitor from obvious and known dangers. *See, e.g., Revis v. Orr,* 234 N.C. 158, 160-61, 66 S.E.2d 652, 654 (1951) (recovery permitted only where dangerous condition is known to landowner and not known to invitee); *Harris v. Nachamson Dept. Stores Co.,* 247 N.C. 195, 198-99, 100 S.E.2d 323, 326 (1957) (law does not impose duty on landowner to protect from dangers known or which should be anticipated by invitee); *Wrenn v. Hillcrest Convalescent Home, Inc.,* 270 N.C. 447, 448, 154 S.E.2d 483, 484 (1967) (defendant landowner under "under no duty to warn plaintiff, as an invitee, of an obvious condition or of a condition of which the plaintiff had equal or superior knowledge.").

The majority of decisions from this Court adhere to the Supreme Court's interpretation of the general rule. *See, e.g., Von Viczay v. Thoms,* 140 N.C. App. 737, 538 S.E.2d 629 (2000); *Jenkins v. Lake Montonia Club, Inc.,* 125 N.C. App. 102, 479 S.E.2d 259 (1997); *Farrelly v. Hamilton Square,* 119 N.C. App. 541, 459 S.E.2d 23 (1995).

In *Von Viczay,* this Court recently held that the defendant landowner could not be responsible for injuries sustained by the plaintiff when she fell on the defendant's icy walkway. Judge Smith stated,

Plaintiff expends considerable effort in her brief to this Court focusing on defendant's knowledge of the dangerous condition. Indeed, defendant's own testimony that she had the driveway plowed and walkways surrounding the house salted evidences her knowledge of the potential danger. *However, the pivotal issue in this case is not defendant's knowledge of the condition, but is plaintiff's knowledge.*

*Von Viczay,* 140 N.C. App. at 739, 538 S.E.2d at 631 (emphasis supplied). Our Court noted the principles set forth by the Supreme Court in *Wrenn, supra,* and concluded that summary judgment for the defendant was proper where the " 'evidence presents no facts from which it can be inferred that defendant had more knowledge than

MARTISHIUS v. CAROLCO STUDIOS, INC.

[142 N.C. App. 216 (2001)]

plaintiff of the alleged dangerous or unsafe condition.' " *Id* at 740, 538 S.E.2d at 632; *see also, James v. Wal-Mart Stores, Inc.*, 141 N.C. App. 721, __ S.E.2d —— (COA99-1465) (16 January 2001) (Edmunds, J., dissenting).

I am cognizant of the few decisions of this Court, upon which the majority relies, which appear to hold that a landowner has a duty to take precautions against obvious dangers where a reasonable person would " 'anticipate an unreasonable risk of harm to the [visitor] *notwithstanding* [the visitor's] *knowledge, warning, or the obvious nature of the condition.*' " *James, supra* (emphasis in original) (quoting *Southern Railway Co. v. ADM Milling Co.*, 58 N.C. App. 667, 673, 294 S.E.2d 750, 755, *disc. review denied*, 307 N.C. 270, 299 S.E.2d 215 (1982)); *see also, Lorinovich v. K Mart Corp.*, 134 N.C. App. 158, 516 S.E.2d 643, *cert. denied*, 351 N.C. 107, —— S.E.2d —— (1999); *Williams v. Walnut Creek Amphitheater Partnership*, 121 N.C. App. 649, 468 S.E.2d 501, *disc. review denied*, 343 N.C. 312, 471 S.E.2d 82 (1996).

The nature of the danger involved in those cases is easily distinguishable from the openness and obviousness of "the danger inherent in an electric power line," the knowledge of such "is generally possessed by adults of normal intelligence." *Floyd*, 268 N.C. at 551, 151 S.E.2d at 4. In *James*, the plaintiff was injured when she slipped and fell on a puddle of water near the entrance of a store. *James*, 141 N.C. App. at ——, —— S.E.2d at ——. The plaintiff in *Lorinovich* was hit by a falling can of salsa which dislodged as she reached for another can that had been stacked too high by the defendant store. *Lorinovich* at 160, 516 S.E.2d at ——. In *Williams*, the plaintiff was injured when she fell down a steep hill while exiting an open air theater in a crowd and with inadequate lighting. *Williams* at 652, 468 S.E.2d at 502-03; *see also, Southern Railway Co.* at 674, 294 S.E.2d at 755 (plaintiff injured when slipped on feed from defendant's mill).

We are required to follow the unchanged Supreme Court precedent enumerated in this dissent. *See, e.g., Brundage v. Foye*, 118 N.C. App. 138, 141, 454 S.E.2d 669, 671 (1995) ("our responsibility is to follow established precedent set forth by our Supreme Court."). The majority, in relying upon two decisions of this Court, wholly ignores the consistent precedent of our Supreme Court that a plaintiff cannot recover where he ignores the obvious danger of an energized power line when in close proximity thereto. *See, e.g., Gibbs v. Carolina Power & Light Co.*, 268 N.C. 186, 192, 150 S.E.2d 207, 212 (1966)

**MARTISHIUS v. CAROLCO STUDIOS, INC.**

[142 N.C. App. 216 (2001)]

(plaintiff who sustained electrical burns while working in close proximity to power lines could not recover where "in the face of obvious and recognized danger he turned his back on a known safe course of conduct and embraced a course of danger. . ."); *Mintz*, 235 N.C. at 315, 69 S.E.2d at 858 ("Where a person seeing [an uninsulated power line] knows that it is, or may be highly dangerous, it is his duty to avoid coming in contact therewith."); *Deaton v. Board of Trustees of Elon College*, 226 N.C. 433, 440, 38 S.E.2d 561, 566 (1946) (no recovery for electrocuted plaintiff where plaintiff, knowing dangers involved in working with power lines, chose to proceed with lines in unsafe manner); *Brown*, 45 N.C. App. at 390, 263 S.E.2d at 370 (citations omitted) ("With respect to power lines in particular, 'a person has a legal duty to avoid contact with an electrical wire of which he is aware and which he knows may be very dangerous.' ").

In *Lambert v. Duke Power Co.*, 32 N.C. App. 169, 231 S.E.2d 31, *disc. review denied*, 292 N.C. 265, 233 S.E.2d 392 (1977), the plaintiff sought to recover for injuries sustained when he touched a power line while working on a billboard. The evidence showed that the plaintiff had previously worked on the same billboard and had been warned about the presence of the wire by a co-worker. *Id.* at 171, 231 S.E.2d at 33. This Court held that the injuries did not result from the defendant's negligence, but from the plaintiff's " 'tragic lapse of attention to a known danger. . . .' " *Id.* (citation omitted). In *Floyd*, 268 N.C. at 551, 151 S.E.2d at 4, the court stated the mere fact that the defendant had knowledge of the danger posed did not support a theory of negligence in the absence of an indication that "deceased did not have an awareness of the danger inherent in an electric power line, such as is generally possessed by adults of normal intelligence." The majority has failed to cite any contrary precedent whatsoever in the context of power lines which would justify its position. Nor has the majority attempted to distinguish these Supreme Court cases from the present case.

Here, the evidence is undisputed that Crowvision employees, including Schlatter and plaintiff, knew of the dangers that the power lines presented. Evidence showed that plaintiff had been working on Carolco's property since October 1992. Plaintiff had worked on Carolco's backlot, and specifically the CP&L easement, prior to the accident. Plaintiff was given notice by Crowvision, his employer, of the power lines on the easement, and had been warned to be careful when working in the vicinity. Plaintiff testified that he knew the power lines were dangerous and could cause serious injury or death,

MARTISHIUS v. CAROLCO STUDIOS, INC.

[142 N.C. App. 216 (2001)]

and he knew to avoid the lines when operating machinery, and specifically, a JLG.

Plaintiff's accident on 1 February 1993 was a terrible tragedy, and plaintiff suffered severe and life-long injuries as a result. However, as a matter of law, plaintiff failed to forecast evidence that Carolco negligently breached its duty of reasonable care. The evidence, taken in the light most favorable to plaintiff, fails to establish Carolco was negligent or that it proximately caused plaintiff's injuries. I would hold that the trial court erred in failing to grant defendant's motion for directed verdict and/or judgment notwithstanding the verdict. *Williamson, supra* (defendant entitled to directed verdict and judgment notwithstanding the verdict where plaintiff cannot produce evidence of foreseeability, and thus, proximate cause).

### Contributory Negligence

In light of my previous conclusion that the trial court should have granted Carolco's motion for directed verdict, the issue of contributory negligence would not be addressed. However, Carolco also assigns as error the trial court's denial of its motions for directed verdict/judgment notwithstanding the verdict or a new trial on this ground. I would alternatively hold that the trial court should have granted either the directed verdict or judgment notwithstanding the verdict because plaintiff's contributory negligence.

Our Supreme Court has consistently held that a plaintiff has a duty to avoid the open and obvious danger of an energized power line. That Court has also consistently held that a plaintiff's failure to do so constitutes contributory negligence as a matter of law. *See, e.g., Floyd, supra; Gibbs, supra; Deaton, supra.*

In *Deaton*, the Supreme Court held that the deceased was contributorily negligent where "[a]t least two perfectly safe courses were open to the deceased, and yet he chose to handle a live wire with his bare hands while he was standing on wet ground. He discarded the safe and chose instead the patently dangerous and unsafe method. . . ." *Deaton*, 226 N.C. at 440, 38 S.E.2d at 566.

This Court has also decided other cases with similar facts to this case and unanimously reached the opposite result. *See, e.g., Brown, supra.* In *Brown*, this Court acknowledged that a plaintiff is not per se contributorily negligent if he contacts an energized power line. *Brown*, 45 N.C. App. at 390, 263 S.E.2d at 370. However, we noted that a court must find contributory negligence as a matter of law "where

the undisputed evidence reveals that plaintiff has failed to exercise due care while approaching or working around electric lines *despite being explicitly warned about the electric lines which subsequently injured him." Id.* (citations omitted) (emphasis supplied). We concluded that the plaintiff's "lapse of attention to a known danger [of the power lines] constituted contributory negligence." *Id.* at 391, 263 S.E.2d at 370.

The law of contributory negligence regarding contact with power lines is set forth by well-established North Carolina law. *See Floyd, supra,* (deceased's "tragic lapse of attention to a known danger in the immediate vicinity must be deemed negligence by the deceased"); *Williams v. Power & Light Co.,* 296 N.C. 400, 404, 250 S.E.2d 255, 258 (1979) ("[i]t is well settled that when a person is aware of an electrical wire and knows that it is or may be highly dangerous, he has a duty to avoid coming in contact with it").

I cannot agree with the majority's statement that plaintiff was not contributorily negligent as a matter of law because "we cannot say a person using ordinary care would have recognized the danger of operating a JLG at or near the power lines." Not only is this statement in contravention to the precedent cited herein, but plaintiff affirmatively testified that <u>he knew</u> of the propensity for danger when working around the power lines, and that the lines <u>must be avoided when working with machinery such as a JLG</u>. The evidence is undisputed that both Crowvision and plaintiff knew of the easement and its dimensions. Plaintiff had worked on Carolco's property since October 1992, and knew of the presence of the power lines. Plaintiff had been warned about the easement and the power lines.

Nevertheless, plaintiff operated the JLG within the CP&L easement and in close proximity to the power lines, without requesting that the lines be de-energized or moved. There is evidence that plaintiff could have accomplished his task by moving the door from the other side of the wall, or by using other non-elevating equipment. Plaintiff had "[a]t least two perfectly safe courses . . . open to [him]," but "discarded the safe and chose instead the patently dangerous and unsafe method." *Deaton,* 226 N.C. at 440, 38 S.E.2d at 566.

Both the Supreme Court's and this Court's precedent supports the conclusion that plaintiff failed to exercise due care while approaching and working around power lines which he knew to be dangerous. Plaintiff was contributorily negligent as a matter of law for his disre-

gard for the obvious and known danger the energized power lines presented.

I conclude that the trial court erred by not granting Carolco's motions for directed verdict or judgment notwithstanding the verdict for the reasons set out above. Accordingly, I respectfully dissent.